# Exhibit "A"

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
|---|
| **SEPTEMBER 2023** |
| E-Filing Number: 2309060768 |
| 03172 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| JANE DOE K.B. | SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| ONE LIBERTY PLACE 1650 MARKET STREET 52ND FLOOR PHILADELPHIA PA 19103 | 1234 MARKET STREET PHILADELPHIA PA 19107 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | LESLIE RICHARDS |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 1234 MARKET STREET PHILADELPHIA PA 19107 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | KENNETH DIVERS |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 1234 MARKET STREET PHILADELPHIA PA 19107 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 1 | 13 | ☒ Complaint | ☐ Petition Action | ☐ Notice of Appeal |
| | | ☐ Writ of Summons | ☐ Transfer From Other Jurisdictions | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☐ Mass Tort | ☐ Commerce | ☐ Settlement |
| ☒ More than $50,000.00 | ☒ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| | ☐ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| | ☐ Other: | | |

| CASE TYPE AND CODE |
|---|
| 2O - PERSONAL INJURY - OTHER |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|---|
| | **FILED PRO PROTHY** SEP 29 2023 C. SMITH | YES          NO |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>JANE DOE K.B.</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| KRISTEN M. FEDEN | 1650 MARKET STREET 52ND FLOOR PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)496-8282 | (215)496-0999 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 307206 | kfeden@smbb.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *KRISTEN FEDEN* | Friday, September 29, 2023, 10:50 am |

FINAL COPY (Approved by the Prothonotary Clerk)

**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
BY: ROBERT J. MONGELUZZI/ ANDREW R. DUFFY/
KRISTEN M. FEDEN/MARNI BERGER
IDENTIFICATION NO.: 36283/77121/309433/316834
1650 MARKET STREET, 52ND FLOOR
PHILADELPHIA, PA  19103
(215) 496-8282
*Attorneys for Plaintiffs*



Filed and Attested by the
Office of Judicial Records
29 SEP 2023 10:50 am
C. SMITH

| | |
|---|---|
| **JANE DOE K.B.,**<br>One Liberty Place<br>1650 Market Street, 52nd Floor<br>Philadelphia, Pennsylvania 19103<br><br>         Plaintiff,<br><br>   *v.*<br><br>**SOUTHEASTERN PENNSYLVANIA<br>TRANSPORTATION AUTHORITY,**<br>1234 Market Street<br>Philadelphia, PA 19107<br><br>And<br><br>**LESLIE RICHARDS,**<br>1234 Market Street<br>Philadelphia, PA 19107<br><br>And<br><br>**KENNETH DIVERS,**<br>1234 Market Street<br>Philadelphia, PA 19107<br><br>And<br><br>**THOMAS J. NESTEL III,**<br>1234 Market Street<br>Philadelphia, PA 19107<br><br>And<br><br>**THOMAS SCHRILLO,**<br>1234 Market Street<br>Philadelphia, PA 19107<br><br>And | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br><br> TERM, 2022<br><br>NO. |

1

Case ID: 230903172

**BRIAN BUCK,**
1234 Market Street
Philadelphia, PA 19107

And

**PATRICK BARR,**
1234 Market Street
Philadelphia, PA 19107

And

**JOHN DOE BARONE,**
1234 Market Street
Philadelphia, PA 19107

And

**JOHN DOE SEPTA**
1234 Market Street
Philadelphia, PA 19107

And

**ALLIED UNIVERSAL SECURITY
SERVICES,**
161 Washington Street, Suite 600
Conshohocken, PA 19428

And

**FISTON NGOY,**
3403 Concord Road,
York, PA 17402

And

**JOHN DOE SECURITY SERVICES**

And

**JOHN DOE DEFENDANTS 1-10**

Defendants.

2

## COMPLAINT – CIVIL ACTION

| | |
|---|---|
| "NOTICE<br><br>"You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may   proceed without you and a judgement may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.<br><br><br>"YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU  DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.<br><br>  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.  IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.<br>          PHILADELPHIA BAR ASSOCIATION<br>          LAWYER REFERRAL and<br>INFORMATION SERVICE<br>      One Reading Center<br>      Philadelphia, Pennsylvania 19107<br>      (215) 238-1701" | "AVISO<br><br>        "Le han demandado en corte.  Si usted quiere defenderse contra las demandas nombradas en las páginas siguientes, tiene veinte (20) dias, a partir de recibir esta      demanda y la notificatión para entablar personalmente o por un abogado una comparecencia escrita y tambien para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted.  Sea avisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir culquier otra demanda o alivio solicitados por el demandante.  Usted puede perder dinero o propiedad u otros derechos importantes para usted.<br><br>      USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE.  SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PARGAR A UN ABOGADO), VAYA EN PERSONA O LLAME POR TELEFONO LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASSISTENCIA LEGAL.  ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO.<br><br>  SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO.<br>          ASSOCIACION DE LICENDIADOS DE FILADELFIA<br>          SERVICO DE REFERENCA E INFORMACION LEGAL<br>      One Reading Center<br>      Filadelfia, Pennsylvania 19107<br>      Telefono: (215) 238-1701" |

Case ID: 230903172

Plaintiff, Jane Doe K.B. (hereinafter "Plaintiff"), by and through her counsel, Saltz, Mongeluzzi & Bendesky, P.C., claim of Defendant, Southeastern Pennsylvania Transportation Authority (hereinafter "Defendant" or "SEPTA"), sum in excess of $50,000.00 in damages, upon cause of action wherein the following are true:

## **INTRODUCTION**

1.      On October 13, 2021, Jane Doe K.B. was savagely and viciously raped on the Defendant SEPTA's Elevated Railway Train (hereinafter "El"), car 1102, which rides along the Market Frankford Line ("MFL").

2.      Despite her resistance, the assailant harassed, groped, grabbed, and sexually assaulted Jane Doe K.B., who was a customer and rider on the El.

3.      Throughout the appalling ***over forty-minute duration*** in which Jane Doe K.B., a passenger on the El, equipped with SEPTA staff and cameras, was subjected to a sexual assault, there is a total lack of intervention or effort to halt the atrocious attack by any individual present—including the Defendants, their agents, and/or employees, despite the surveillance and cameras, the fact that the MFL carries about 90,000 people on an average weekday,[1] the clear contract with Defendant Allied Universal Security Services (hereinafter "Allied"), and Defendants' mis-assurances to riders, like Jane Doe K.B., that they will keep her, and other passengers, safe.

4.      Alarmingly, while Jane Doe K.B. resisted as much as she could throughout the entire duration of the attack, some of this brutal act unfolded as Jane Doe K.B. was clearly

---

[1] Eduardo Medina, *As a Woman Was Raped, Train Riders Failed to Intervene, Police Say*, N.Y. TIMES, (Oct. 17, 2021), https://www.nytimes.com/2021/10/17/us/riders-watched-woman-raped-septa.html#:~:text=The%20SEPTA%20train%20car%20near,sexually%20assaulted%2C%20the%20authorities%20said.&text=Update%3A%20Prosecutor%20casts%20doubt%20on%20account%20of%20passengers%20not%20intervening.

Case ID: 230903172

unconscious, and therefore, incapacitated and non-consenting.

5.     Yet, shockingly, the conspicuous absence of assistance or attempt to prevent this heinous criminal act remained.

6.     Finally, *__after over forty minutes__* of being harassed, assaulted, rendered unconscious, and brutally  raped, a SEPTA officer arrived and pried the assailant off of Plaintiff Jane Doe K.B.

7.     As a result of the foreseeable, preventable, and heinous sexually vile assault, Plaintiff Jane Doe K.B. sustained major and irreparable trauma and distress that has derailed her life and will continue to plague her indefinitely into the future.

8.     The brutal attack on Jane Doe K.B. on October 13, 2021, followed a long history substantially similar  unprovoked attacks committed against  patrons and SEPTA employees on Defendant SEPTA trains, as well as on the El, specifically.

9.     Defendants were aware of the history of unprovoked attacks on Defendant SEPTA trains, as well as on the El specifically, and affirmatively withheld proper security, willfully refused to hire sufficient officers, and overall took no or inadequate steps to protect Jane Doe K.B. and other riders, inclusive of SEPTA employees, from unprovoked violence and harm.

10.     In fact, prior to Jane Doe K.B. being sexually assaulted, Defendants explicitly represented (on multiple occasions) to Jane Doe K.B. and the public, inclusive of public officials, that they could keep patrons safe from further attacks.

11.     Defendants even provided assurances of safety in the form of hiring private security Defendant Allied, and implementing safety plans, including SEPTA's Safety, Cleaning, Ownership, Partnership, and Engagement ("S.C.O.P.E.") Program (hereinafter referred to as "SCOPE" or "SCOPE Program").

12.     Despite Defendants' assurances of safety, and their complete capability to keep riders safe, when Jane Doe K.B. entered the El to go home after a long day of work on October 13, 2021, she was savagely sexually assaulted and suffered irreparable injuries.

13.     Defendants promises that Jane Doe K.B. and other riders would be kept safe were broken, and Defendants consciously disregarded a great and increased risk of harm to Jane Doe K.B. and other riders (inclusive of employees), acted with deliberate indifference and willful misconduct to Jane Doe K.B. and other riders rights and safety, and Defendants' misconduct shocks the conscience.

14.     Defendants must be held liable.

## PARTIES

15.     Plaintiff, Jane Doe K.B., is an adult female residing in the Commonwealth of Pennsylvania.

16.     Defendant, Southeastern Pennsylvania Transportation Authority (hereinafter "SEPTA" or "Defendant SEPTA"), is a regional transportation corporation that operates buses, commuter rails, and trolleybuses in and around Philadelphia, Pennsylvania.

17.     At all relevant times hereto, Defendant SEPTA is registered to do business in the Commonwealth of Pennsylvania and is headquartered at 1234 Market Street, Philadelphia, Pennsylvania 19107.

18.     At all relevant times hereto, Defendant SEPTA owned and operated the inbound El travelling west on the Market-Frankford Line toward the 69th Street Transportation Center in Upper Darby, Pennsylvania.

19.     At all relevant times hereto, Plaintiff was a lawfully seated passenger on the inbound El travelling west on the Market-Frankford Line.

6

20.     Defendant, Leslie Richards (hereinafter "Defendant Richards" or "Richards"), is an adult individual who at all times material hereto acted in his individual capacity and as Chief Executive Officer ("CEO") and General Manager ("GM") under color of state law as the CEO and GM of Defendant SEPTA, located at 1234 Market Street, Philadelphia, Pennsylvania 19107; and as the CEO and GM of Defendant SEPTA, was responsible for, *inter alia,* the day-to-day administration, implementation, and operation of SEPTA policy including implementation and enforcement of Security Responses and Procedures at all times material hereto at SEPTA, and on any and all SEPTA facilities, trains, vehicles, and property, acting within the course and scope of her employment as CEO and GM of Defendant SEPTA. Suit is brought herein against her as an individual and in her official capacity as the CEO and GM of Defendant SEPTA.

21.     Defendant, Kenneth Divers (hereinafter "Defendant Divers" or "Divers"), is an adult individual who at all times material hereto acted in his individual capacity and as the Director of Outreach Programs at Defendant SEPTA, located at 1234 Market Street, Philadelphia, Pennsylvania 19107; under color of state law as the Director of Outreach Programs at Defendant SEPTA and leader of SEPTA's SCOPE Program, and in this role, was responsible for, *inter alia,* the investigation and abatement of violence on SEPTA-owned and operated stations, railways, trains, busses, and trolleys, inclusive of the El, "[m]aking SEPTA safe for all,"[2] "providing a safe and welcoming travel experience for returning customers",[3] "ensuring a secure environment",[4] and conducting himself at all times material hereto under color of state law, responsible for the safety needs and plans of all passengers, including Jane Doe K.B., and

---

[2] *See* Exhibit A, p. 5.

[3] Kenneth Diver's LinkedIn Page (last visited September 27. 2023).

[4] *Id.*

7

employees riding on Defendant SEPTA, acting in concert with and at the direction of Defendant CEO and GM, Leslie Richards, and the SEPTA Defendants named herein. Suit is brought herein against him as an individual and in his official capacity as the Director of Outreach Programs at Defendant SEPTA and leader of SEPTA's SCOPE Program.

22.    Defendant, Thomas J. Nestel III (hereinafter "Defendant Nestel" or "Nestel"), is an adult individual who at all times material hereto was the Chief of Transit Police for Defendant SEPTA, located at 1234 Market Street, Philadelphia, Pennsylvania 19107, acting in his individual capacity and as Chief of Transit Police for Defendant SEPTA, at all times material hereto pursuant to the course and scope of his employment as Chief of Transit Police for Defendant SEPTA, conducting himself at all times material hereto under color of state law, responsible, *inter alia,* for the security of the riders (passengers and employees) of Defendant SEPTA including, but not limited to Plaintiff, Jane Doe K.B., riding Defendant SEPTA, at all times material hereto, particularly affirmatively authorizing SEPTA Transit Police Officers to  "patrol by car, foot or mobile cart and continue the tradition of keeping passengers and employees safe and secure on the SEPTA system",[5]  investigation,[6] "reduce violent crimes on transportation and… provide[] critical enforcement in high crime areas",[7] ensuring all members of the Transit

---

[5] SEPTA, *About Transit Police*, https://www5.septa.org/safety/security/about-septa-police/ (last visited September 25, 2023).

[6] *Id*. (**"Criminal Investigations Squad:** The squad is composed of a dedicated team of trained detectives and supervisors who investigate crimes committed on SEPTA property. Detectives are responsible for conducting interviews of complainants and witnesses, gathering evidence, and obtaining arrest and search warrants. Other duties include undercover surveillance and patrols throughout the system. Detectives receive training in crime scene investigation, legal studies, interview and interrogation techniques and fingerprinting. The CIS work closely with SEPTA's Office of the Inspector General to investigate fraud, waste, abuse and mismanagement within the Authority. The CIS also works with many local, state and federal law enforcement departments and has a detective assigned to a regional FBI Multi-Agency Joint Terrorism Task Force.")

[7] *Id*. (**"Visible Intermodal Protection Enforcement Response (VIPER):** The VIPR unit's mission is to reduce violent crimes on transportation and support the Uniformed Patrol Bureau. The unit provides critical enforcement in high crime areas and is part of our multi-modal counter terrorism efforts.")

Case ID: 230903172

Police are "qualified in… rail safety, [and] defensive tactics",[8] management and maintenance of the dispatch system, camera system, life safety system, and radio system and databases,[9] and "performing daily computer maintenance, compiling statistical data and crime mapping",[10] and "work[ing] in partnership with other SEPTA employees and customers" and "provid[ing] a safe and secure work and travel environment",[11] including reducing criminal activity within the confines of Defendant SEPTA, including the El, and ensuring the safety of all passengers on SEPTA, including Plaintiff, Jane Doe K.B., all while acting in concert with and at the direction of Defendant CEO and GM, Leslie Richards, and the SEPTA Defendants named herein. Suit is brought herein against him as an individual and in his official capacity as Chief of Transit Police for Defendant SEPTA.

23.      Defendant, Thomas Schrillo (hereinafter "Defendant Schrillo" or "Schrillo"), is an adult individual who at all times material hereto was a member of the Transit Police for Defendant SEPTA, located at 1234 Market Street, Philadelphia, Pennsylvania 19107, acting in his individual capacity and as a member of the Transit Police for Defendant SEPTA, at all times material hereto pursuant to the course and scope of his employment as a member of the Transit Police for Defendant SEPTA, conducting himself at all times material hereto under color of state law, responsible, *inter alia,* for the security of the passengers and employees of Defendant

---

[8] *Id.* (**Training and Recruitment Unit:** They make sure that every member of the department is qualified in CPR/first aid, firearms re-qualification, cultural diversity awareness, report writing, crimes code updates, rail safety, defensive tactics and verbal judo training every year. This unit also schedules training with the Municipal Police Officers' Education and Training Commission (M.P.O.E.T.C.) and the physical fitness test annually for all officers. They are also responsible for recruiting and processing of police applicants.")

[9] *Id.* (**Communications/Technical Unit:** This unit is made up of police and public safety communications specialists who operate a state-of-the-art, computer-aided dispatch system. They also manage a sophisticated smart station closed-circuit television (CCTV) camera system and life safety system. In addition, they maintain the radio system and databases. Other duties include performing daily computer maintenance, compiling statistical data and crime mapping.")

[10] *Id.*

[11] *Id.* (Under Mission).

Case ID: 230903172

SEPTA including, but not limited to Plaintiff, Jane Doe K.B., riding Defendant SEPTA, at all times material hereto, particularly the "patrol by car, foot or mobile cart and continue the tradition of keeping passengers and employees safe and secure on the SEPTA system",[12] providing a presence to deter crime, investigation,[13] "reduce violent crimes on transportation and… provide[] critical enforcement in high crime areas",[14] ensuring all members of the Transit Police are "qualified in… rail safety, [and] defensive tactics",[15] management and maintenance of the dispatch system, camera system (which allows for live observation), life safety system, and radio system and databases,[16] and "performing daily computer maintenance, compiling statistical data and crime mapping",[17] and "work[ing] in partnership with other SEPTA employees and customers" and "provid[ing] a safe and secure work and travel environment",[18] including reducing criminal activity within the confines of Defendant SEPTA, including the El, and ensuring the safety of all passengers on SEPTA, including Plaintiff, Jane Doe K.B., all while acting in concert with and at the direction of Defendant CEO and GM, Leslie Richards, Defendant Nestel, and the SEPTA Defendants named herein. Suit is brought herein against him as an individual and in his official capacity as a member of the Transit Police for Defendant SEPTA.

24.    Defendant, Brian Buck (hereinafter "Defendant Buck" or "Buck"), is an adult individual who at all times material hereto was a member of the Transit Police for Defendant

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* (Under Mission).

Case ID: 230903172

SEPTA, located at 1234 Market Street, Philadelphia, Pennsylvania 19107, acting in his individual capacity and as a member of the Transit Police for Defendant SEPTA, at all times material hereto pursuant to the course and scope of his employment as a member of the Transit Police for Defendant SEPTA, conducting himself at all times material hereto under color of state law, responsible, *inter alia,* for the security of the riders (passengers and employees) of Defendant SEPTA including, but not limited to Plaintiff, Jane Doe K.B., riding Defendant SEPTA, at all times material hereto, particularly the "patrol by car, foot or mobile cart and continue the tradition of keeping passengers and employees safe and secure on the SEPTA system",[19] providing a presence to deter crime, investigation,[20] "reduce violent crimes on transportation and… provide[] critical enforcement in high crime areas",[21] ensuring all members of the Transit Police are "qualified in… rail safety, [and] defensive tactics",[22] management and maintenance of the dispatch system, camera system, life safety system, and radio system and databases,[23] and "performing daily computer maintenance, compiling statistical data and crime mapping",[24] and "work[ing] in partnership with other SEPTA employees and customers" and "provid[ing] a safe and secure work and travel environment",[25] including reducing criminal activity within the confines of Defendant SEPTA, including the El, and ensuring the safety of all passengers on SEPTA, including Plaintiff, Jane Doe K.B., all while acting in concert with and at the direction of Defendant CEO and GM, Leslie Richards, Defendant Nestel, and the Defendants named

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* (Under Mission).

11

herein. Suit is brought herein against him as an individual and in his official capacity as a member of the Transit Police for Defendant SEPTA.

25.     Defendant, Patrick Barr (hereinafter "Defendant Barr" or "Barr"), is an adult individual who at all times material hereto was a member of the Transit Police for Defendant SEPTA, located at 1234 Market Street, Philadelphia, Pennsylvania 19107, acting in his individual capacity and as a member of the Transit Police for Defendant SEPTA, at all times material hereto pursuant to the course and scope of his employment as a member of the Transit Police for Defendant SEPTA, conducting himself at all times material hereto under color of state law, responsible, *inter alia,* for the security of the passengers and employees of Defendant SEPTA including, but not limited to Plaintiff, Jane Doe K.B., riding Defendant SEPTA, at all times material hereto, particularly the "patrol by car, foot or mobile cart and continue the tradition of keeping passengers and employees safe and secure on the SEPTA system",[26] providing a presence to deter crime, investigation,[27] "reduce violent crimes on transportation and... provide[] critical enforcement in high crime areas",[28] ensuring all members of the Transit Police are "qualified in... rail safety, [and] defensive tactics",[29] management and maintenance of the dispatch system, camera system, life safety system, and radio system and databases,[30] and "performing daily computer maintenance, compiling statistical data and crime mapping",[31] and "work[ing] in partnership with other SEPTA employees and customers" and "provid[ing] a safe

---

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

Case ID: 230903172

and secure work and travel environment",[32] including reducing criminal activity within the confines of Defendant SEPTA, including the El, and ensuring the safety of all passengers on SEPTA, including Plaintiff, Jane Doe K.B., all while acting in concert with and at the direction of Defendant CEO and GM, Leslie Richards, Defendant Nestel, and the Defendants named herein. Suit is brought herein against him as an individual and in his official capacity as a member of the Transit Police for Defendant SEPTA.

26.    Defendant, John Doe Barone (hereinafter "Defendant Barone" or "Barone"), is an adult individual who at all times material hereto was a member of the Transit Police for Defendant SEPTA, located at 1234 Market Street, Philadelphia, Pennsylvania 19107, acting in his individual capacity and as a member of the Transit Police for Defendant SEPTA, at all times material hereto pursuant to the course and scope of his employment as a member of the Transit Police for Defendant SEPTA, conducting himself at all times material hereto under color of state law, responsible, *inter alia,* for the security of the passengers and employees of Defendant SEPTA including, but not limited to Plaintiff, Jane Doe K.B., riding Defendant SEPTA, at all times material hereto, particularly the "patrol by car, foot or mobile cart and continue the tradition of keeping passengers and employees safe and secure on the SEPTA system",[33] providing a presence to deter crime, investigation,[34] "reduce violent crimes on transportation and... provide[] critical enforcement in high crime areas",[35] ensuring all members of the Transit Police are "qualified in... rail safety, [and] defensive tactics",[36] management and maintenance of

---

[32] *Id.* (Under Mission).
[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

Case ID: 230903172

the dispatch system, camera system, life safety system, and radio system and databases,[37] and "performing daily computer maintenance, compiling statistical data and crime mapping",[38] and "work[ing] in partnership with other SEPTA employees and customers" and "provid[ing] a safe and secure work and travel environment",[39] including reducing criminal activity within the confines of Defendant SEPTA, including the El, and ensuring the safety of all passengers on SEPTA, including Plaintiff, Jane Doe K.B., all while acting in concert with and at the direction of Defendant CEO and GM, Leslie Richards, Defendant Nestel, and the Defendants named herein. While Defendant Barone's first name is currently unknown to Plaintiff, Plaintiff is aware of his role and suit is brought herein against him as an individual and in his official capacity as a member of the Transit Police for Defendant SEPTA.

27.     Defendant, Allied Universal Security Services (hereinafter "Defendant Allied Universal" or "Allied"), is a private security and facility services company that provides tailored security personnel, training, and technology to its clients in Pennsylvania and across the country.

28.     At all times relevant hereto, Defendant Allied Universal is registered to do business in the Commonwealth of Pennsylvania and is located at 161 Washington Street, Suite 600, Conshohocken, Pennsylvania 19428.

29.     On information and belief, at all times relevant hereto, Defendant SEPTA contracted with and continues to contract with Defendant Allied Universal, the entity responsible for, *inter alia,* carrying out safety and security procedures, providing a presence to deter crime, site-specific policies, emergency response activities, responding to incidents and critical situations, conducting regular patrols on SEPTA-owned and operated stations, railways, trains,

---

[37] *Id.*

[38] *Id.*

[39] *Id.* (Under Mission).

Case ID: 230903172

busses, and trolleys, inclusive of the El, and providing security services in and the investigation and abatement of violence on SEPTA-owned and operated stations, railways, trains, busses, and trolleys, inclusive of the El, during the time Plaintiff, Jane Doe K.B. was viciously and horrifically assaulted on.[40]

30.      Defendant, John Doe Security Services (hereinafter "Defendant Security Services"), is a private security and facility services company that provides tailored security personnel, training, and technology and upon information and belief, at all times relevant hereto, Defendant SEPTA contracted with and continues to contract with Defendant Security Services, the entity responsible for, *inter alia,* carrying out safety and security procedures, providing a presence to deter crime, site-specific policies, emergency response activities, responding to incidents and critical situations, conducting regular patrols on SEPTA-owned and operated stations, railways, trains, busses, and trolleys, inclusive of the El, and providing security services in and the investigation and abatement of violence on SEPTA-owned and operated stations, railways, trains, busses, and trolleys, inclusive of the El, during the time Plaintiff, Jane Doe K.B. was viciously and horrifically assaulted on.[41]

31.      Defendant, John Doe SEPTA Agents (hereinafter "SEPTA Agents", are adult individuals who, at all times relevant hereto, were SEPTA agents, located at 1234 Market Street, Philadelphia, Pennsylvania 19107, acting in his/her individual capacity, at all times material hereto pursuant to the course and scope of his/her employment as an agent of Defendant SEPTA, conducting himself/herself at all times material hereto under color of state law, responsible, *inter alia,* for duties and obligations, including reducing criminal activity within the confines of

---

[40] SEPTA-Allied Universal Contract Article, https://whyy.org/articles/septa-extends-its-1-5m-contract-for-security-guards-on-market-frankford-line/ (last visited June 29, 2023).

[41] SEPTA-Allied Universal Contract Article, https://whyy.org/articles/septa-extends-its-1-5m-contract-for-security-guards-on-market-frankford-line/ (last visited June 29, 2023).

Case ID: 230903172

Defendant SEPTA, including the El, and ensuring the safety of all passengers on SEPTA, including Plaintiff, Jane Doe K.B., all while acting in concert with and at the direction of Defendant CEO and GM, Leslie Richards, Defendant Nestel, and the Defendants named herein. Suit is brought herein against him as an individual and in his official capacity as a member of the Transit Police for Defendant SEPTA.

32.     At all times material hereto, and with respect to all actions described herein, Defendants SEPTA, Richards, Divers, Nestel, Schrillo, Buck, Barr, Barone, and John Doe SEPTA Agents (collectively referred to herein as "SEPTA Defendants") were each acting under color of state law, jointly, severally, and in concert with each other and with color of their authority as officials and/or employees of Defendant SEPTA.

33.     At all times material hereto, and with respect to all actions described herein, Defendants Allied and Security Services (collectively referred to herein as "Security Defendants") were acting under color of state law, jointly, severally, and in concert with each other and with color of their authority as officials and/or employees of Defendant SEPTA.

34.     Defendant, Fiston Ngoy (hereinafter "Defendant Ngoy" or "Ngoy"), is an adult individual residing at York County Prison, located at 3403 Concord Road, York, Pennsylvania 17402.

35.     On April 13, 2023, Defendant Ngoy pled guilty to Felony-1 Rape of an Unconscious Person (section 3121(a)(3) of the Pennsylvania Crimes Code) for Raping Jane Doe K.B. while she was on the El.

36.     This action arises under the Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. Sections 1983, 1985, 1986, and 1988, the Fourteenth Amendments to the Constitution of the Commonwealth of Pennsylvania, the statutory and case law of the Commonwealth of Pennsylvania, including 42 Pa. C.S.A. § 8542 *et seq.,* and

16

42 Pa. C.S.A. § 8550. Plaintiff, Jane Doe K.B., alleges via this action, as well, that the Defendants individually, jointly, severally, and in concert with each other violated her constitutional right to bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

37.     Venue properly lies in Philadelphia County pursuant to Pa. R.C.P. No. 1006 and 2179(a)(2) because Defendants regularly conduct business in Philadelphia County and this cause of action arose in Philadelphia County due to the horrific and brutal physical and sexual assaults forced upon Plaintiff for over forty minutes, while she was a passenger on the inbound El travelling west on the MFL toward the 69th Street Transportation Center.

38.     This Court has jurisdiction in that this is a claim for monetary damages exceeding the local rules for amounts in controversy, exclusive of interest, costs, and attorney's fees.

39.     The sexual abuse suffered by Plaintiff, Jane Doe K.B., as described more fully herein, was caused solely and exclusively by the willful misconduct, negligence, gross negligence, and recklessness of Defendants and was in no manner whatsoever due to any act or failure to act on Plaintiff's part.

## OPERATIVE FACTS

40.     Defendants wholly failed in their most basic legal and moral duties to guard and protect patrons, including Plaintiff, Jane Doe K.B., from sexual assault, physical abuse, and other acts of violence that ***routinely*** and ***regularly*** occurred in or on SEPTA-owned and controlled property, particularly the El along the MFL.

41.     Defendants failed in numerous ways, including, but not limited to, not properly securing SEPTA facilities and/or transit vehicles to ensure the safety of patrons and passengers, including Plaintiff; not properly training and/or supervising its staff and/or actual and/or apparent

Case ID: 230903172

agents; failing to recognize the clear and obvious danger posed to SEPTA riders, like Plaintiff

Jane Doe K.B. by SEPTA transportation vehicles and/or stations; failing to take adequate and/or

appropriate measures to address the ***numerous*** accounts of violence, physical, and sexual

assaults reported in SEPTA-owned and/or controlled property; acting improperly within the

bounds of limits of their lawful authority and/or engaging in unlawful acts while purporting to

act in the performance of his/her official duties; and failing to have in place any legitimate

measures to protect against such violence and physical and sexual assaults.

42.     Defendants knew or should have known that their deliberate indifference and

failure to promulgate effective safety measures would create an environment in which patrons

and passengers, including Plaintiff, would be exposed and subject to substantial harm.

### SEPTA's PERVASIVE HISTORY OF SEXUAL ASSAULT, VIOLENCE, AND OTHER SAFETY ISSUES

43.     SEPTA stations and rail lines, notably the MFL, on which the El rides, are well

known – especially by riders – for being overwhelmed with drugs, violence, and homelessness.

44.     There exists a ***long*** history of violence at or around SEPTA stations and/or rail

lines, including the following reported incidents, including on the MFL, where Plaintiff, Jane

Doe K.B. was sexually assaulted, for over forty minutes:[42]

     a.  In 2021, 124 assaults, 15 aggravated assaults, and 19 sex offenses were
        reported at or around the Frankford Transportation Center.

     b.  In 2021, 15 assaults and 8 aggravated assaults were reported at or around the
        Arrott Transportation Center Station.

     c.  In 2021, 8 assaults and 1 sex offense were reported at or around the Church
        Station.

---

[42] SEPTA Survey, https://www.nbcphiladelphia.com/investigators/septa-survey-what-riders-want-fixed-on-mass-transit-system/3164389/ (last visited June 29, 2023).

Case ID: 230903172

d.  In 2021, 10 assaults, 3 aggravated assaults, and 2 sex assaults were reported at or around the Erie-Torresdale Station.

e.  In 2021, 8 assaults, 1 aggravated assault, and 1 sex offense were reported at or around the Tioga Station.

f.  In 2021, 40 assaults, 8 aggravated assaults, and 6 sex offenses were reported at or around the Allegheny Station.

g.  In 2021, 15 assaults, 5 aggravated assaults, and 4 sex offenses were reported at or around the Somerset Station.

h.  In 2021, 9 assaults, 2 aggravated assaults, and 4 sex offenses were reported at or around the Huntingdon Station.

i.  In 2021, 13 assaults, 4 aggravated assaults, and 2 sex offenses were reported at or around the Berks Station.

j.  In 2021, 15 assaults, 2 aggravated assaults, and 4 sex offenses were reported at or around the Girard Station.

k.  In 2021, 11 assaults, 2 aggravated assaults, and 3 sex offenses were reported at or around the Spring Garden Station.

l.  In 2021, 12 assaults and 5 sex offenses were reported at or around the 5th Street/Independence Hall Station.

m.  In 2021, 27 assaults, 4 aggravated assaults, and 13 sex offenses were reported at or around the 8th Street Station.

n.  In 2021, 23 assaults, 5 aggravated assaults, and 6 sex offenses were reported at or around the 11th Street Station.

o.  In 2021, 42 assaults, 6 aggravated assaults, and 14 sex offenses were reported at or around the 13th Street Station.

19

p.   In 2021, 99 assaults, 12 aggravated assaults, and 24 sex offenses were reported at or around the 15th Street/City Hall Station.

q.   In 2021, 20 assaults, 2 aggravated assaults, and 7 sex offenses were reported at or around the 30th Street Station.

r.   In 2021, 12 assaults, 1 aggravated assault, and 8 sex offenses were reported at the 34th Street Station.

s.   In 2021, 18 assaults, 4 aggravated assaults, and 8 sex offenses were reported at or around the 40th Street Station.

t.   In 2021, 16 assaults, 7 aggravated assaults, and 6 sex offenses were reported at or around the 46th Street Station.

u.   In 2021, 29 assaults, 2 aggravated assaults, and 6 sex offenses were reported at or around the 52nd Street Station.

v.   In 2021, 14 assault, 1 aggravated assault, and 2 sex offenses were reported at or around the 56th Street Station.

w.   In 2021, 7 assaults, 1 aggravated assault, and 5 sex offenses were reported at or around the 60th Street Station.

x.   In 2021, 8 assaults and 1 sex offense were reported at or around the 63rd Street Station.

y.   In 2021, 77 assaults, 9 aggravated assaults, and 16 sex offenses was reported at or around the 69th Street Transportation Center.

45.   These reports *barely scratch the surface* of the extensive history of violent crimes that have been pervasive at or around SEPTA stations and/or rail lines.

46.   In fact, between 2019 and 2021, while the rest of the City of Philadelphia saw a drop in robberies and aggravated assaults, the number of robberies and aggravated assaults

20

Case ID: 230903172

reported on the SEPTA public transit system **increased by 80%**.[43]

47.     The number of violent crimes on SEPTA spiked ***despite*** an overall drop in SEPTA ridership.

48.     Indeed, between January 2015 and October 2021, SEPTA's own records documented *at least* 13 reports of sex-related incidents.[44]

49.     On information and belief, however, the actual number of sex-related incidents occurring on SEPTA was higher, and SEPTA despite having record of the violence, were concealed. [45]

[46]

> **Key findings**
>
> The data made it possible for Winberg to draw some important conclusions in her investigation. The biggest takeaway, she says: SEPTA officials "don't really understand the problem" of sexual assault and harassment targeting their employees.
>
> Not only is their data poorly kept, she reported, it also appears to be incomplete. While her analysis identified 13 sex-related incidents from January 2015 through October 2021, the sexual harassment incident involving the bus driver whose story prompted Winberg's records request was not included in the spreadsheet, even though the driver had extensively documented the incident.
>
> The investigation's conclusions went beyond the specific issue of sexual assault and harassment. Based on the data SEPTA turned over, Winberg was able to show that other kinds of assault and harassment against transit employees had been rising steadily in the years leading up to the huge spike in 2020.

50.     Tragically for Plaintiff, her own rape and sexual assault on the El was **far from the first** in recent SEPTA history:

    a.   In or around December 2020, a SEPTA bus driver was sexually harassed by a male passenger. On information and belief, the passenger asked the driver

---

[43] SEPTA Crime Rates, https://www.inquirer.com/news/septa-crime-aggravated-assault-robbery-pandemic-20220426.html (last visited June 29, 2023).

[44] SEPTA Failure to Track Sexual Assault, https://www.rcfp.org/billy-penn-septa-investigation/ (last visited June 30, 2023).

[45] *Id.*

[46] *Id.*

Case ID: 230903172

inappropriate and sexually explicit questions, masturbated in front of her, and spat on her.[47]

    b.  In or around October 2021, a man attacked and assaulted a young woman at the 69th Street Terminal of the MFL.[48] The perpetrator reportedly assaulted the woman after she asked for directions on how to get to the opposite platform. The perpetrator reportedly dropped his pants then attempted to rip off the young woman's pants while she screamed for help.

    c.  In or around October 2021, an 18-year-young woman reported being touched and sexually assaulted by the same perpetrator as above on the El while taking the subway train to school.[49]

    d.  On or around July 17, 2022, at approximately 4:30 AM, a 40-year-old woman was reportedly sexually assaulted on the platform of the Snyder station of the SEPTA Broad Street Line.[50] The assailant, identified and charged as Namir Thomas, allegedly pointed a gun at the victim and her boyfriend before sexually assaulting her then fleeing the scene on a bicycle.

    e.  In or around October 2022, a 13-year-young girl was sexually assaulted in or around the SEPTA subway station at North Broad and Race Street.[51] On information and belief, the perpetrator told the young girl that he had a gun,

[47] SEPTA Harassment Investigative Report, https://billypenn.com/2022/07/07/septa-bus-drivers-sexual-harassment-riders-disrespect-employees/ (last visited June 30, 2023).

[48] 69th Terminal Attacks Article, https://www.nbcphiladelphia.com/news/local/arrest-made-in-another-assault-at-septa-station-in-upper-darby/3004473/ (last visited June 30, 2023).
[49] 69th Terminal Attacks, https://www.nbcphiladelphia.com/news/local/arrest-made-in-another-assault-at-septa-station-in-upper-darby/3004473/ (last visited June 30, 2023).

[50] Snyder Station Assault, https://6abc.com/philadelphia-septa-rape-suspect-charged-snyder-station-sex-assault/12065346/ (last visited June 29, 2023).

[51] Teen Girls Assaulted, https://www.nbcphiladelphia.com/news/local/arrest-made-in-sex-assault-of-girl-13-leaving-septa-subway/3399643/ (last visited June 30, 2023).

Case ID: 230903172

forced the child into a nearby stairwell, sexually assaulted her, then walked alongside the young girl as she walked the rest of the way to school.

f.  In or around October 2022, a 15-years-young girl was sexually assaulted on her way to school.[52] On information and belief, the perpetrator attempted to talk to the child on the Broad Street Line subway and continued trying to engage with her as she exited the train. The perpetrator then reportedly forced the young girl under a stairwell, where he attempted to sexually assault her, but the victim fought off the initial attack. The perpetrator reportedly continued following the young girl out of the SEPTA station, where he pushed her into an apartment and sexually assaulted her. Police released surveillance footage of the perpetrator captured at around 8 AM.

g.  In or around September 2022, a 22-years-young woman reported being sexually assaulted by a man after boarding the Broad Street Line subway train at City Hall Station.[53] The perpetrator reportedly followed the woman through the station and onto the train, stood over her, groped her, and exited the train at the Tasker Morris Station.

h.  In or around September 2022, a 40-year-old woman was reportedly sexually assaulted at the Tasker Morris Station of the Broad Street Line.[54] The perpetrator reportedly approached the woman, asked for a cigarette, asked for a kiss, and when the woman declined, the perpetrator grabbed her waist and kissed and groped her.

---

[52] Id.
[53] Broad Street Line Assaults, https://www.fox29.com/news/suspect-sought-in-connection-with-sexual-assaults-on-septa-broad-st-line (last visited June 30, 2023).

[54] Broad Street Line Assaults, https://www.fox29.com/news/suspect-sought-in-connection-with-sexual-assaults-on-septa-broad-st-line (last visited June 30, 2023).

Case ID: 230903172

51.     These acts of violence and sexual assault infiltrating SEPTA stations and/or rail lines pose a serious risk to the health, safety, and well-being of SEPTA passengers, particularly when SEPTA is failing to is concealing key information.[55]

52.     Even SEPTA employees are not immunized from such violence and physical and sexual assaults and threats.[56]

53.     According to SEPTA data, the number of incidents marking assault and harassment against SEPTA employees jumped from 47 recorded incidents in 2015 to 476 recorded incidents in 2020.[57]



**How often are SEPTA employees harassed or assaulted?** [58]
Number of incidents against SEPTA employees by the public, from 2015 to October of 2021

| | |
|---|---|
| 2015 | 47 |
| 2016 | 65 |
| 2017 | 97 |
| 2018 | 98 |
| 2019 | 124 |
| 2020 | 476 |
| 2021 (January-October) | 312 |

Note: The 2021 data doesn't encompass the full year. It represents the number of incidents from January through October.
Chart: Michaela Winberg · Source: SEPTA · Get the data · Created with Datawrapper

54.     On information and belief, SEPTA data reported assaults in or around SEPTA-owned or controlled property is almost certainly incomplete.[59]

55.     On information and belief, reported incidents are stored in hard copy in <u>thirty separate locations</u>, and the ***only digital version*** of these records is a spreadsheet that is reviewed

---

[55] *Id.*

[56] SEPTA Assault and Harassment Report, https://www.rcfp.org/billy-penn-septa-investigation/ (last visited June 30, 2023).

[57] *Id.*

[58] *Id.*

[59] SEPTA Harassment Investigation, https://billypenn.com/2022/07/07/septa-bus-drivers-sexual-harassment-riders-disrespect-employees/ (last visited June 30, 2023).

Case ID: 230903172

<u>once a month</u> by the safety committee.[60]

56.     In fact, SEPTA's incident record-keeping system ***does NOT have a category for***
***sexual assault or harassment***[61] evidencing further efforts of concealment, particularly given
how prevalent sexual assault and harassment is on SEPTA-owned property, particularly on the
El.

57.     And these records do not account for the concealed data that truly reveals the
entirety of the sexual assaults and/or harassment on SEPTA-owned property.

**The times SEPTA operators have been sexually harassed or assaulted** [62]

These are the sexual harassments and assaults reported by SEPTA employees from 2015 through October of 2021

| Date | Time | Route | Gender | Incident description |
|---|---|---|---|---|
| April 7, 2016 | 7:44 AM | 23-45 | F | Operator threatened by male passenger by touching her leg |
| July 14, 2016 | 10:00 AM | 3 | F | Operator states female passenger touched her |
| July 22, 2016 | 3:00 PM | 55 | F | Operator reports that passenger reach across her chest and grabbed her |
| June 26, 2018 | 2:57 PM | 64 | M | Operator called and stated female passenger grabbed, pulled his shirt and spit on his face, she is also in altercation with other passengers |
| April 13, 2019 | 10:09 PM | 48 | M | Passenger touched operator's face without consent, operator asked not to touch his face and passenger then threatened/called persons to inflict violence on operator |
| September 29, 2019 | 6:00 PM | 52 | F | Operator reports they were sexually assaulted (groped) on the bus by a male passenger |
| | | | | Female Passenger touched |

58.     Notably, on information and belief, SEPTA Defendants' concealment efforts are
made clear by  the fact that the sexual harassment and/or assault of their own SEPTA bus driver
detailed above, was **not included** in the spreadsheet of reported sex-related incidents.

---

[60] *Id.*
[61] *Id.*

[62] *Id.*

Case ID: 230903172

59.    <u>The absence of this and other reported incidents in SEPTA's own records</u>

<u>calls into question the adequacy and completeness of SEPTA's existing record-keeping and</u>

<u>incident-reporting mechanisms</u> and make evident the culture of deceit in concealing the true

lack of safety on SEPTA-owned property, including the El.



60.    Unquestionably, the past acts of unabated violence on SEPTA-owned property as

well as SEPTA statements, as stated herein, makes clear that the SEPTA Defendants had actual

awareness, based on concrete evidence, information, and data, of the risk of harm to passengers,

like Plaintiff, Jane Doe K.B., placing them sufficiently on notice, in accord with the law that

failure to act, concealing actual violence data, or improperly and inadequately acting, enhances

the risk of harm to riders, passengers and employees alike.

---

[63] SEPTA Violence Article, https://whyy.org/articles/septa-employees-endure-steady-threats-of-violence-even-as-transit-ridership-drops/ (last visited June 30, 2023).

Case ID: 230903172

61.     This also evidences that SEPTA Defendants and Security Defendants acted intentionally, recklessly, and with willful misconduct and deliberate indifference to the safety of these passengers, like Plaintiff, Jane Doe K.B.

62.     Despite the numerous documented and reported incidents of violence, physical attacks, and sexual assault and harassment in or around SEPTA-owned and controlled properties and public transportation vehicles, on information and belief, Defendants failed to take effective measures to curb the pervasive violence experienced by SEPTA passengers, like Plaintiff Jane Doe K.B., and employees.

63.     Indisputably, the harm suffered by Plaintiff, Jane Doe K.B., was foreseeable and fairly direct.

64.     Undeniably, the SEPTA Defendants acted in willful disregard for the safety of the Plaintiff, particularly in the concealment of important crime preventing data.

65.     Unquestionably there existed a relationship between the SEPTA Defendants and Plaintiff, Jane Doe K.B., as Plaintiff Jane Doe was a customer and rider on SEPTA, and at the time of the assault, was actively a rider on a SEPTA-owned property that was known to be a violent cause of concern area. Hence Plaintiff, Jane Doe K.B. was a foreseeable plaintiff as she was a member of a discrete class of persons, specifically, a rider on a SEPTA-owned property known to be a "prevalent hotspot" for violence, and she was subjected to and suffered a brutal attack and horrific rape as a result of the Defendants' affirmative actions.

66.     Ngoy, at the time of the assault, was a threat to this discrete class of persons, specifically, riders on SEPTA-owned property known to be a "prevalent hotspot" for violence, such as the El riding the Market Frankford Line. This is evidenced from the brutal rape he enacted on Plaintiff Jane Doe K.B. *and* the exposure of penis to other persons in that discrete class, including SEPTA Agents.

Case ID: 230903172

67.     And, certainly the SEPTA Defendants used their authority to create an opportunity that otherwise would not have existed for Defendant Ngoy to horrifically and brutally rape Plaintiff, Jane Doe K.B.

68.     This opportunity existed, in part, due to SEPTA's deceptive concealment efforts.

### THE S.C.O.P.E. PROGRAM AND SEPTA'S FAILED SAFETY MEASURES

69.     In April of 2021, responding to public pressures and calls to address the numerous and pervasive safety issues in and around SEPTA stations and/or rail lines, SEPTA leadership adopted the Safety Cleaning Ownership Partnership and Engagement Program (hereinafter "S.C.O.P.E. Program" or "S.C.O.P.E."). (*See* SCOPE – Leading the Way: SEPTA's Coordinated Response to Safety and Security, attached hereto as **"Exhibit A"**).

70.     The S.C.O.P.E. Program utilizes data collection and employee feedback to identify "hotspots" within Greater Philadelphia and is largely geared toward ameliorating issues centered around individuals experiencing homelessness and drug-addiction. (*See* **"Exhibit A"**).

71.     Importantly, upon information and belief, Defendant Ngoy was an individual experiencing homelessness.

72.     SEPTA, through its S.C.O.P.E. Program, claims to "work to protect every person on our transit system." (*See* **"Exhibit A"**).

73.     In fact, one of the S.C.O.P.E. Program's Evaluation and Key Performance Measures is to decrease "incidents and assaults." (*See* **"Exhibit A"**).

74.     Certainly, he and other SEPTA Defendants knew, that concealing accurate data on crime and/or violent SEPTA-owned property, would enable further crime, not prevent it or create a safe and secure platform or environment for SEPTA riders, like Plaintiff Jane Doe K.B.

75.     Moreover, and significantly, one of the "most prevalent hotspots" identified in a report, based on January 2021 data (**months *prior* to Plaintiff being raped**), were stations, along

Case ID: 230903172

the MFL, where the El travels, and include the Frankford Transportation Center and stops along which Plaintiff, Jane Doe K.B., **was assaulted, grouped, touched, and raped for over forty minutes** without intervention and/or rescue by any of the Defendants.



76.    According to Defendant Divers's testimony at the Joint Committee on Transportation and Public Safety of the Council of the City of Philadelphia Public Hearings, held on November 29, 2021, this map was developed after tracking "the times of day and night where incidents of concern were occurring".[64]

---

[64] *See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City of Philadelphia held on November 29, 2021.

Case ID: 230903172

77.     According to Defendant Divers's testimony, this map "identif[ies] problem areas and enabl[es] [SEPTA Defendants] to deliver targeted services. ***Now our immediate goal is to put our resources to best possible use to prevent potential incidents from ever taking place.***"[65]

78.     Beyond enacting S.C.O.P.E., on information and belief, SEPTA also contracted with private security service companies, including Defendant Allied and/or Security Defendants, to station guards at various stations along the El beginning in or around Spring 2021.[66]

79.     In fact, on May 10, 2021, five months ***prior*** to Plaintiff, Jane Doe K.B. being brutally raped and assaulted, despite the concealment of key and critical lifesaving data and information, Defendant Richards testified:

> SEPTA currently has 237 sworn Transit Police Officers – the highest number in six years – and we have worked to deploy these officers strategically to address employee and customer safety concerns. **SEPTA has taken the unprecedented step of contracting with a third-party security firm to post 60 unarmed security guards at *Market-Frankford Line Stations from 15th Street to Frankford Transportation Center to* supplement the work of our Transit Police and *provide security for our* employees and *customers*.**[67]

80.     Additionally, Defendant Richards represented that there were additional safety measures being taken in response to the clear unabated violence on SEPTA-owned property:

---

[65] *Id.*

[66] Allied United Contract, https://whyy.org/articles/septa-extends-its-1-5m-contract-for-security-guards-on-market-frankford-line/ (last visited June 30, 2023).

[67] Testimony of Defendant Richards, May 10, 2021, http://phlcouncil.com/wp-content/uploads/2021/05/Testimony-of-SEPTA-General-Manager-Leslie-S.-Richards_Philadelphia-City-Council-FY2022-Operating-Budget-Hearing_May-10-2021.pdf

Case ID: 230903172

> Some of the additional measures we are taking to improve safety and security for our customers and our employees in and around our stations include: [68]
> - **High Intensity Beats** – Each day, Transit Police officers are assigned to multiple locations that have high volume traffic or are customer / employee complaint locations.
> - **Rolling Thunder** – Twice a week, a Transit Police Commander leads a group of officers for a three-hour period during which they move throughout the system enforcing summary violations and board passing trains looking for criminal activity.
> - **Operator Safety Checks** – Every day, each patrol officer is required to conduct three operator safety checks of buses/trolleys to ensure that the operator is safe, and no illegal activity is occurring on that vehicle: this amounts to as many as 300 checks per day.
> - **Supplemental supervision** – We have added additional supervisory employees at locations to help ensure the safety of our operators who work at locations that experience large numbers of destination-less riders overnight.
> - **Quality of Ride Checkpoints** – Every day, at 12 different locations, officers gather at one station for an hour-long period of time to board every train coming through to greet passengers, look for illegal activity, and check on persons that are not conscious and alert.
> - **Undercover Operations** – Every day, undercover Transit Police ride the system to spot violators who will be issued an administrative notice, which could lead to removal from the system.
> - **Preparing for Students Returning to In-person Learning** – SEPTA Transit Police are monitoring return-to-school plans and are working with the School District and Philadelphia Police Department to prepare for when students return to the SEPTA system.

81.     Even so, the additional security guards and measures, if enacted (in the spirit of SEPTA Defendants' culture of deceit and concealment) were a temporary and ineffective measure, and on information and belief, did little to mitigate the onslaught of violent crimes and sexual assaults in or around SEPTA stations, other than deceptively present the violent crimes as low or non-existent.

82.     Unquestionably SEPTA Defendants had **actual awareness** that such security efforts if enacted (in the spirit of SEPTA Defendants' culture of deceit and concealment) were ineffective, because Transit Workers Union President Willie Brown made clear on or about July 19, 2021 – three months ***prior*** to Plaintiff Jane Doe K.B. being horrifically attacked and raped – that the guards and other efforts "made a small difference," and called for increased police presence throughout SEPTA stations and/or railways. [69]

83.     There is no evidence this was done, despite, as made clear below, Defendant Nestle, as made clear herein, agreed that the increased police presence *would* in fact serve as a

---

[68] *Id.*

[69] Allied United Contract, https://whyy.org/articles/septa-extends-its-1-5m-contract-for-security-guards-on-market-frankford-line/ (last visited June 30, 2023).

Case ID: 230903172

crime deterrent.

84.     This actual awareness of the risk and/or efforts to actively conceal data that is important to abate crime (and avoid innocent riders, like Plaintiff Jane Doe K.B, from being raped), is sufficient to hold the SEPTA Defendants constitutionally liable under the law.

85.     In fact, the SEPTA Defendants and their employees, agents, and/or representatives, acknowledged and recognized the dangers posed to SEPTA passengers:

a.     Defendant Richards testified at the November 29, 2021 Joint Committee on Transportation and Public Utilities & Public Safety hearing, that "violence and crime in the city reached its highest level in more than a generation" since the start of the pandemic. Defendant Richards also acknowledged that vulnerable individuals, of which, upon information, Defendant Ngoy was part of, were increasingly seeking refuge in SEPTA stations and vehicles.

b.     Defendant Nestel, who abruptly resigned in or around July 2022,[70] testified at the November 29, 2021 Joint Committee on Transportation and Public Utilities & Public Safety hearing, that crime maps provided by the Philadelphia Police Department "clearly show the amount of violence surrounding SEPTA stations and bus loops."

c.     Following the July 17, 2022 sexual assault at Snyder station, SEPTA released a statement on safety and security acknowledging that **"SEPTA knows that riders have concerns about safety and security on the system"** and boasting that "police have access to more than **28,000 cameras**".[71]

86.     The SEPTA representatives' statements reveal that Defendants knew or should have known of the extensive risk of harm to which they exposed Plaintiff.

---

[70] Thomas Nestel Retirement Article, https://www.inquirer.com/transportation/septa-police-chief-thomas-nestel-retires-20220705.html (last visited June 30, 2023).

[71] Snyder Station Assault, https://6abc.com/philadelphia-septa-rape-suspect-charged-snyder-station-sex-assault/12065346/ (last visited June 29, 2023).

Case ID: 230903172

87.     Defendants have not only been complicit in allowing sexual and physical violence against SEPTA passengers and patrons to continue unabated, but Defendants have, with deliberate indifference, concealed reports of violence, as discussed herein, and created an environment wherein riders, passengers and employees, are vulnerable and susceptible to the most horrific and violent assaults on their bodies.

88.     Tragically for Plaintiff, SEPTA's inadequate SCOPE Program and Defendants' concealment of critical data and information on violence resulted in the failure to promulgate appropriate safety measures, creating the environment in which Plaintiff, Jane Doe K.B., was horrifically sexually assaulted and raped.

89.     Defendants used their authority to conceal critical data and information on violence, therein creating an opportunity that otherwise not have existed for Defendant Ngoy's horrific crime to occur, by, *inter alia*, concealing critical data and information on violence resulting in the failure to take appropriate steps to address the violence along the MFL and refusing to monitor clearly unsafe common areas (which clearly placed Plaintiff Jane Doe K.B. in a more dangerous position), and concealing reports and complaints of violence (which made Plaintiff Jane Doe K.B. more vulnerable to the danger of attack).

90.     Unquestionably these acts had the effect of encouraging perpetrators, like Defendant Ngoy, to engage in crimes in the SEPTA-owned property, particularly the "prevalent hotspots", confidently, and escape with a high likelihood that the criminal act will be able to be perpetrated without being caught.

### THE DEVASTATING, HORRIFIC AND BRUTAL RAPE AND ASSAULT OF PLAINTIFF, JANE DOE, K.B.

91.     At or around 9:15 PM on October 13, 2021, Plaintiff boarded the El travelling west on the MFL at the Frankford Transportation Center.

Case ID: 230903172

92.     Defendant Ngoy followed Plaintiff onto the El.

93.     Ngoy sat down next to Plaintiff and put his arm around her shoulders.

94.     Plaintiff attempted to nudge Defendant Ngoy's arm off.

95.     Ngoy then began verbally harassing Plaintiff.

96.     Ngoy then began to groping Plaintiff.

97.     Defendant Ngoy continued harassing and groping Plaintiff for ***more than thirty minutes***, while she resisted.

98.     At a certain point, Plaintiff fell unconscious.

99.     On information and belief, at no time prior to or during the time Plaintiff was being assaulted and falling unconscious did anyone on the El intervene or make efforts to call or report the horrific crime.

100.    This is particularly shocking and alarming given that there was a SEPTA Agent on the El, who, upon information and belief, during this time did *nothing* to assist Plaintiff, Jane Doe K.B. in violation of SEPTA policy, as described more fully herein.

101.    Ngoy pulled down his pants, exposed his penis, ripped off his clothes, and began to vaginally rape Plaintiff, Jane Doe K.B.

102.    Upon information and belief, Defendant Ngoy actively raped Plaintiff for at least ***eight minutes and assaulted her for at least forty minutes***.

103.    On information and belief, at no time prior to or during the rape did anyone on the El intervene to assist Plaintiff.

104.    Right before Defendant was raped, Defendant SEPTA Agent called and reported this horrific crime. However, she only reported that Ngoy was disrobing himself (likely in cooperation to the SEPTA culture of deceit and concealment).

Case ID: 230903172

105.    When the train arrived at the Transportation Station, the SEPTA Officers were present, responding to a report of a man (Defendant Ngoy) who was "disrobing".

106.    Had the SEPTA Agents, particularly those in Police dispatch been properly trained and/or acted appropriately, the crime perpetrated upon Plaintiff Jane Doe K.B. would have been prevented; instead SEPTA Defendants acted with willful disregard, concealing critical data and information and/or in the spirit of cooperation to the SEPTA culture of deceit and concealment, failed to review the live surveillance where the caller was, and inaccurately dispatched a rape, as a male disrobing, further placing Plaintiff at an increased risk of harm, delaying her ability to obtain medical care, and failing her terribly.

107.    **At no point** did Plaintiff invite, induce, ratify, implicitly consent, or comply with this sexual abuse. To the contrary, Plaintiff was mortified and in shock at Defendant Ngoy's actions, and the affirmative actions and lack of action by the other passengers and Defendants.

### PLAINTIFF'S HARM WAS PREVENTABLE

108.    Tragically and inexplicably, Plaintiff's rape was one in a series of reported and documented sexual assaults and sex-related incidents in or around SEPTA-controlled or owned properties or vehicles between 2015 and 2022, as described more fully herein.

109.    In a statement following Plaintiff's rape, SEPTA spokesperson, Andrew Busch, stated, "we really do hope that people will read about this, will see the stories on TV, and will think about helping with the efforts to prevent incidents like this from happening."[72]

110.    Mr. Busch simultaneously **acknowledged SEPTA's pervasive safety issues**, while *shirking SEPTA responsibility* and attempting to put the onus on the public, a theme seen in the testimony of Defendants Richards and Nestle from the hearing held on November 29, 2021

---

[72] NY Times, https://www.nytimes.com/2021/10/17/us/riders-watched-woman-raped-septa.html (last visited June 29, 2023).

Case ID: 230903172

and as a result of the prevalent, yet unabated violence.

111.    The violent sexual assault of Plaintiff ***could and should have been prevented*** if Defendant had properly reported critical data, refused or dismantled their past and current culture of deceit and concealment, and employed and implemented reasonable and appropriate safety and security measures to ensure the safety and security of its riders – passengers and employees, including Plaintiff.

112.    The violent misconduct and assault experienced by and perpetrated upon Plaintiff as described herein was wholly foreseeable.

113.    Unquestionably the unabated violence in SEPTA-owned Property, inclusive of the El, documented (and undocumented and/or concealed) by SEPTA, in reports held by SEPTA, with data and reporting ***pre-dating the horrific rape of Plaintiff***, Jane Doe K.B., containing numerous factual findings corroborating the unabated, unfettered, ongoing violence within SEPTA Defendants' and Security Defendants' purview on Defendant SEPTA-owned property, including the El, to wit: (1) a long-standing pattern denial, concealment, and misrepresentation on the part of the SEPTA Defendants, and likely the Security Defendants, as it related to violence within the SEPTA-owned system, including the El; (2) the existence of an implied threat within SEPTA-owned property[73], including the El, against passengers, like Jane Doe K.B., and employees, alike; (3) attempts by SEPTA Defendants and Security Defendants to conceal

---

[73] NBC Philadelphia, $1K Reward Offered After Teens Attack, Concuss SEPTA Worker in Philly, ("Nestel condemned the attack,… say[ing] his officers need help to combat rising crime on the transit system").

[74] Fox 29 Philadelphia, SEPTA police chief responds to calls for resignation amid violent attacks against SEPTA employees, https://www.fox29.com/news/septa-police-chief-responds-to-calls-for-resignation-amid-violent-attacks-against-septa-employees (last visited on September 25, 2023) (regarding an incident that predated the horrific rape of Jane Doe K.B. by approximately seven months).

Case ID: 230903172

and/or fail to abate[74] violent incidents and continue with policies[75] known to endanger passengers, like Plaintiff Jane Doe K.B. and employees; and most troubling, (4) a factual finding that there existed an attitude and atmosphere on the part SEPTA Defendants that a certain level of violence within SEPTA-owned property including, but not limited to the El, was and will be accepted and acceptable[76] and/or should be concealed, resulting in an atmosphere of violent chaos within SEPTA-owned system rendering it unsafe for passengers, like Jane Doe K.B., and employees to utilize it for the activities for which they were regularly used and intended.

114.    The data as referenced herein, were known by SEPTA Defendants who represented that they would immediately formulate and implement within the SEPTA-owned property, including the EL, administrative procedures, protocols, responses, and procedures, inclusive of the SCOPE Program, contracted employ of Defendant Allied and/or Security Defendants, and/or other security officials, to abate the continued unfettered violence within the SEPTA-owned property, including the El, a "prevalent hotspot"; however, the SEPTA Defendants, although consistently assuring Public Officials, inclusive of City Council members,

---

[74] Fox 29 Philadelphia, SEPTA police chief responds to calls for resignation amid violent attacks against SEPTA employees, https://www.fox29.com/news/septa-police-chief-responds-to-calls-for-resignation-amid-violent-attacks-against-septa-employees (last visited on September 25, 2023) (regarding an incident that predated the horrific rape of Jane Doe K.B. by approximately seven months).

[75] WHYY, SEPTA police union votes no confidence in chief Thomas Nestel, https://whyy.org/articles/septa-police-union-votes-no-confidence-in-chief-thomas-nestel/ (last visited September 25, 2023); *see also* WHYY, SEPTA police union says a catch and release policy endangers officer safety, https://whyy.org/articles/septa-police-union-says-a-catch-and-release-policy-endangers-officer-safety/ (**noting that on or before March 10, 2021, approximately seven months predating the horrific rape of Jane Doe K.B., Transit Police Union President Omari Bervine "wrote a letter on behalf of the union to SEPTA general manager Leslie Richards late last month. In it, he denounced the policy, saying it makes officers' jobs 'even more dangerous' and 'needlessly endangers the welfare' of riders.")**(emphasis added)

[76] WHYY, SEPTA employees endure steady threats of violence even as transit ridership drops, ("Still, [SEPTA employee] can't recall a time when Transit Police ever caught anyone who threatened her. Same with [a second SEPTA employee] and [ third SEPTA employee]— whose five attackers were all caught on camera. **Both of them never felt like Transit Police took their cases seriously, and nothing ever came of their reports**… But Brown, the union president, said those efforts barely scratch the surface. **They want more Transit Police officers inside buses and stations. He said there aren't enough arrests or charges, and he thinks there should be a media campaign to address this — a 'SEPTA's Most Wanted' website with photos of suspects and rewards for tips."**)

37

and the public, inclusive of passengers like Plaintiff Jane Doe K.B., and employees of the

implementation of such administrative procedures, protocols, responses, and procedures,

inclusive of the SCOPE Program, employ of Defendant Allied and/or Security Defendants,

and/or other security officials, failed to do so, and/or did them inadequately and/or with willful

misconduct concealed critical information and failed to warn and come to the aid of Plaintiff,

Jane Doe K.B., and as a consequence, violence within the SEPTA-owned property, including the

El, continued unfettered and unabated resulting in a continuation of a fostered culture of

concealment and deceit and an atmosphere of violent chaos within the SEPTA-owned property,

including the El, and continued unfettered brutal criminal activities of violence upon innocent

people, including Plaintiff Jane Doe K.B., within the SEPTA-owned property, including the El,

which the SEPTA Defendants and Defendant Allied and Security Defendants, through its

administrators, agents, servants, workmen, and/or employees, knew of and continued to foster,

through deliberate indifference and in complete disregard for the ongoing violence and safety of

riders, therein culminating in the expected, yet preventable, brutal and horrific rape and assault

of Plaintiff, Jane Doe K.B., by Defendant Ngoy.

115.    Defendants knew and/or reasonably believed that their actions and omissions

would violate Plaintiff's constitutional liberty interest in personal bodily integrity that is

protected by the Due Process Clause of the Fourteenth Amendment.

116.    Defendants' carelessness, negligence, gross negligence, willful misconduct, and

recklessness provided Defendant Ngoy unfettered access to Plaintiff, Jane Doe K.B.

117.    Due to the SEPTA Defendants' deliberate indifference to the critical data on

violence, and necessity, mandate, and calls to immediately implement adequate and effective

administrative measures, policies, procedures, and protocols to abate the rampant unfettered

violence within the SEPTA-owned property, SEPTA Defendants, Security Defendants, and

Case ID: 230903172

Defendant Allied, through its agents, servants, workmen, and/or employees, to identify, punish, and remove threats and/or implement technology to abate repeated criminal assaults upon innocent riders, like Plaintiff Jane Doe K.B., and employees, particularly at SEPTA-owned property, inclusive of the El on the MFL, for several years before the rape of Plaintiff, Jane Doe K.B., an atmosphere of concealment, deceit, and fostered violence and chaos that reigned at SEPTA-owned property, rendering SEPTA-owned property, inclusive of the El on the MFL, unsafe for the activities for riders, like Jane Doe K.B., and employees to use is as it was intended and regularly used as of October 13, 2021, which, was certain to result in a horrific crime being perpetrated against Plaintiff, Jane Doe K.B., on October 13, 2021, which has left Plaintiff irreparably harmed and traumatized, as shall be more fully set forth herein.

118.    Indeed, in light of the past decades of violence, SEPTA's concealment efforts, and Plaintiff's rape, on October 21, 2021, Philadelphia City Council adopted Resolution 210856, entitled, Authorizing Council's Committees on Transportation and Public Utilities and Public Safety to hold joint hearings regarding ongoing issues of public safety at SEPTA facilities and aboard SEPTA vehicles.[77]

119.    This Resolution authorized Philadelphia City Council's Committee on Transportation and Public Utilities and Public Safety to hold joint hearings regarding ongoing issues of public safety at SEPTA facilities and aboard SEPTA vehicles, with the resolution providing:

---

[77] City County, City of Philadelphia, Life, Liberty, and You, https://phila.legistar.com/LegislationDetail.aspx?ID=5190655&GUID=76209AB7-C925-49FA-A689-7D01B5D189F0&Options=Other%7C&Search=210856 (last visited September 25, 2023).

Case ID: 230903172

## City of Philadelphia



Council of the City of Philadelphia
Office of the Chief Clerk
Room 402, City Hall
Philadelphia

(Resolution No. 210856)

### RESOLUTION

Authorizing Council's Committees on Transportation and Public Utilities and Public Safety to hold joint hearings regarding ongoing issues of public safety at SEPTA facilities and aboard SEPTA vehicles.

WHEREAS, Public safety issues – compounded by the pandemic – have persisted at SEPTA stations and routes across the City; and

WHEREAS, On Wednesday, October 13, a woman was raped aboard the Market-Frankford line in route westbound toward the 69th Street Transportation Center; and

WHEREAS, Authorities say the attack occurred for over 8 minutes and no one on the train intervened; and

WHEREAS, Earlier this year, a man was shot inside the 15th street Market-Frankford line station, just days after a SEPTA employee was brutally assaulted at the same location; and

WHEREAS, A mass shooting occurred outside the Olney Transportation Center in February that wounded at least 8 individuals, one of 19 shootings that have occurred in close proximity to the center since 2015; and

WHEREAS, These shocking acts are just a few recent examples of the heightened violence and crime that is plaguing the public transportation system; and

WHEREAS, Residents rely on SEPTA to get to work or go to school, but many are opting to find alternative modes of transportation amidst the rise in crime; and

WHEREAS, Maria Robinson, a 45 year old resident in North Philadelphia, told the *Inquirer* she no longer takes the subway to her medical appointments due to safety concerns: "I'd rather take a taxi and pay whatever I got to pay. I used to take this a lot," she said. "But it's scary. It's really scary."; and

## City of Philadelphia

*RESOLUTION NO. 210856 continued*

WHEREAS, A safe and functioning public transportation system is vital for our working class residents, vital for attracting tourists and stimulating our economy, and vital for the thousands of transportation employees that work on the frontlines; and

WHEREAS, SEPTA must take immediate action and explore new policies and procedures to protect riders and employees; now, therefore, be it

RESOLVED, BY THE COUNCIL OF THE CITY OF PHILADELPHIA, that it herby authorizes Council's Committees on Transportation and Public Utilities and Public Safety to hold joint hearings regarding ongoing issues of public safety at SEPTA facilities and aboard SEPTA vehicles.

Case ID: 230903172

120.    Defendant Richards testified about SEPTA's **_alleged_** "commitment to traditional safety and security".[78]

121.    According to Defendant Richards, SEPTA has a special relationship with its riders, like Plaintiff Jane Doe K.B., and is fundamentally responsible for keeping passengers, like Jane Doe K.B., safe, as she testified:

> "The horrific rape that occurred on the Market Frankfort Line in October and the disturbing act of violence and ethic intimidation on the Broad Street Line earlier this month are seared into the minds of every SEPTA employee. These incidents are reminders of the special role that said that has in the lives of our customers and communities we serve, as well as our fundamental responsibility to keep the public safe, both operationally and personally... these incidents represent a clarion call for all of us to be vigilant about public safety and develop collaborative and effective strategies to prevent and respond to acts of violence wherever they occur in our region. The safety of SEPTA employees and customers is paramount. SEPTA does not tolerate violence of any kind against SEPTA employees or customers, and we work hard to develop strategies to prevent crime and pursue offenders."

(*See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City of Philadelphia held on November 29, 2021).

122.    Concealment of critical data and information to abate crime shows that Defendant Richards' statements are false.

123.    According to Defendant Nestle's testimony, stations "conducive to crime and disorder" are necessary to be virtually monitored, to keep passengers, like Jane Doe K.B., and employees safe, as he testified:

> "Hiring of police recruits is an ongoing priority. While that occurs, security guards have been contracted to serve as a visible deterrent and to function as field observation posts for the Transit Police. In addition to guards, a virtual patrol element has been initiated as a force multiplier that monitors multiple stations for conditions that may be conducive to crime and disorder. The virtual patrol element is being increased to further assist the field patrols...The transit

---

[78] *See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City of Philadelphia held on November 29, 2021

Case ID: 230903172

> police are constantly adapting to the changing conditions and are
> committed to making the system safe for its riders and employees."

(*See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the

Council of the City of Philadelphia held on November 29, 2021).

124.     Affirmative concealment of critical data and information to abate crime, shows

implementing Defendant Nestle's plan, particularly of the virtual patrol element, would have

prevented the rape of Plaintiff Jane Doe K.B. – as there would have readily been live-surveilling

the "prevalent hotspot" and intervened within the forty minutes Defendant was visibly harassing

and assaulting Plaintiff, Jane Doe K.B., before Defendant Ngoy engaged in an active eight

minute rape of her inclusive of a total 40 minute-long assault.

125.     Significantly, Defendant Allied recklessly, intentionally, and negligently failed to

act.

126.     Defendant Nestle testified that "there are definitely hotspots where we have

officers assigned throughout the service day and then there are other officers that are traveling on

trains…. Checking our facilities… the overwhelming number of our resources are assigned in the

Philadelphia area."[79]

127.     It was under a totality of all of these circumstances as referenced above and

below, by SEPTA Defendants, that Plaintiff, Jane Doe K.B., and other innocent passengers rode

the El, on the evening of October 13, 2021.

128.     Moreover, according to Defendant Divers, the SCOPE Program was in response

to the increasing vulnerable population, of which – upon information and belief, Defendant Ngoy

was part of – is in place to "Put people First", which means that the "primary goal of SCOPE is

to ensure the health and safety of employees, riders, and vulnerable individuals" which, as he

---

[79] *See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City
of Philadelphia held on November 29, 2021.

Case ID: 230903172

testified, is accomplished through security measures that have been taken, including:

> "We have added private security guards to offset coverage gaps, increasing the lighting in stations, installing elevator monitors, equipping maintenance and custodian workers with SEPTA cell-phones to enable direct communication with the SEPTA Transit Police dispatch..."

(*See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City of Philadelphia held on November 29, 2021).

129.   Defendant Divers also testified that the SEPTA survey of riders "speaks volumes about our success in making riders feel safer, and more comfortable" claiming that "satisfaction scores have soared at every station"; however, he, in line with the SEPTA culture of deceit and concealment, conveniently concealed the fact that "[c]rime, homelessness, drug use and cleanliness are among the chief concerns identified by those who answered the survey's 27 questions."[80]

130.   Unquestionably, all Defendants had concrete information about, *inter alia*, the risk of violence presented by criminals on SEPTA-owned property, that put them on notice that their continued actions, which permitted unabated violence on SEPTA-owned property, significantly enhanced the risk of harm to Plaintiff, Jane Doe K.B., and thus the harm that befell her was foreseeable.

131.   Defendants' deliberate indifference was made evident based on their concealment efforts and/or the representations that wholly failed to take into account reality, which was addressed by the Councilmen.

132.   According to Philadelphia Council Member David Oh, Sponsor of the Resolution, the long-standing atmosphere of violent chaos within the SEPTA-owned property, including the

---

[80] NBC 10, SEPTA Survey: What Riders Want Fixed on Mass Transit System, https://www.nbcphiladelphia.com/investigators/septa-survey-what-riders-want-fixed-on-mass-transit-system/3164389/ (last visited on September 26, 2023).

43

Case ID: 230903172

El, culminating in the brutal and horrific rape of Plaintiff, Jane Doe K.B., on October 13, 2021, ,

Councilmen Oh testified:

> "What is the transportation system doing about this problem. It
> seems like they are doing a lot of things about a lot of things, but
> what they should be doing, I believe, and I think a lot of people
> believe, is ensuring that those who use the system are safe... in
> 2020 SEPTA employees reported 30 physical assaults. **And they
> did _not_ report a number of others, including the 46 times they
> were spit on, the 30 times they were hit with objects, and in 12
> instances they were sent to the hospital.** We saw on television a
> drive-by shooting at the Olney Transportation Center right outside
> of Central High School and Girls High, where eight people were
> shot in a drive-by, and shortly thereafter at the Fern Rock
> Transportation Center where six people were shot. This year alone
> twenty-one people have been shot at near the Market Frankford
> lines, Allegheny Station, in Kensington, at, near, on. And this
> summer a 29-year-old man was murdered on a bus full of people.
> These incidents do, um, do hit the news, and people are shocked,
> and people want to know what is being done about it. Just recently
> we watched another video of another high school student, a female,
> getting a beat down, on a SEPTA train, and, and it incites fear, and
> it incites other types of problems. Um, and of course, finally the
> horrific rape of a woman on a crowded train. I mean these are just
> some of the incidents that are in the news..."

(*See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the

Council of the City of Philadelphia held on November 29, 2021) (emphasis added).

133.    This evidences Defendants' administrators, servants, agents, workmen, and/or

employees continued deliberate indifference.

134.    According to Philadelphia Council Member Curtis Jones, the long-standing

atmosphere of violent chaos within the SEPTA-owned property, including the El, culminating in

the brutal and horrific rape of Plaintiff, Jane Doe K.B., on October 13, 2021, and in this regard,

Councilmen Jones testified:

> "What I want to draw your attention to, is in the third Council
> District, and the forth Council District, and I want to go from 46th
> Street, to 52nd Street, to 56th and Market, to 63rd and Market, and
> say that based on conversations I've had with constituents. Based
> on the fact that I can't often get my own staffers. I'm, I could

44

throw a rock out my window and hit your platform at 60th street. I'm in an office there now. I can't get my staffers to want to go to my other office on that subway, um, because they feel unsafe. Um and and things that were cited, and I want, I dug down a little deeper, that the homeless population and transit population is not – it is a social concern, and I get it, but it, its almost like two, three shifts, with them… but I was told after 8 o'clock, they're asking for it, I mean that was the quote. And, um, not only do they cite high numbers of young people, but high number of people that need um, treatment, but also young, um, predators, that are looking for vulnerable people to rob. **One of the things that they were concerned about was the absence of visible uniformed police officers going through elevated platforms**… "

(See Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City of Philadelphia held on November 29, 2021) (emphasis added).

135.   This further evidences the continued deliberate indifference of Defendants' administrators, servants, agents, workmen, and/or employees/.

136.   Importantly this was completely contrary to the testimony offered by Defendant Nestle, evidencing further concealment of critical data and information and the ***true problem***, evidencing clear continued deliberate indifference of all Defendants through its administrators, servants, agents, workmen, and/or employees:

"Yeah, no that's District 1, and District 1 stretches from 69[th] street to, uh, 15[th] street. Um, they have officers going through each of those stations each day. We are also a part of the 60[th] street Corridor vicibility team with the Philadelphia POlioce and we are also a part of the Southwest task force for drug sales along market street. So we do have officers assigned there…. We also have virtual patrols… at a number of different station"

(*See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City of Philadelphia held on November 29, 2021).

137.   Revealing awareness that Defendant Nestle's response was nothing but concealment, Councilman Jones responded: "There is nothing like a uniformed officer going in

45

between those cars"; [81] to which Defendant Nestle stated in the affirmative.

138.    Councilman Jones continued that, "There is no substitute for those boots on the ground," and it appears that he affirms that comment as well.[82]

139.    This was agreed to by Councilman Oh, who made clear that a uniformed officer who has the authority to arrest... is both a deterrent to crime as well as a confident builder..."[83]

140.    Councilman Jones then challenged Chief Nestle to provide deployment along that "prevalent hotspots" and the platform and route of which Plaintiff was assaulted for 40 minutes and raped for 8 minutes.[84]

141.    Councilman Jones made clear that he wanted those deployment logs in light of Defendant Nestle's affirmation as stated herein, because from

> "what I have been told by not one, not two, not ten, but **dozens** of people, is that [Transit Police and Allied] aren't highly visible, and that, particularly at night, you know, I've had people that chose to be, remain nameless, say that and they legally carry weapons, it's so bad and it's like you put your back to the door and you, you keep your head on the swivel to make sure you're not perceived as vulnerable. And so, if we're, if we are looking to establish that sense of safety, and that visible, um, officer, is one, or officers is one of the keys"; again, a statement that Defendant Nestle agreed with and said "we'll certainly take a look at doing a better job on that stretch."

*See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City of Philadelphia held on November 29, 2021).

142.    This is consistent with the testimony of Councilwoman Brooks, who made clear that there were fights on the SEPTA **every day**.

---

[81] *See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City of Philadelphia held on November 29, 2021.

[82] *Id.*

[83] *Id.*

[84] *Id.*

Case ID: 230903172

143.    Indeed, Ling Ying Chen, the mother of a young rider who was viciously beaten, testified about the "severe violence" her victim daughter experienced when she was brutally beaten "in the SEPTA train… [and] if there was good enough security in the SEPTA" her daughter would not have been harmed as severely.  Ms. Chen testified that if there was a SEPTA police officer on the train, her daughter would not have experienced the severe and horrific violence she experienced. In conclusion of her testimony, she pleaded with SEPTA to make SEPTA safe for riders.

144.    Evidencing further deliberate indifference for the safety of riders, Councilman Jones revealed that "in our review of Baltimore, and Jones Hopkins--uh, School, when they put actual eyes on patrols, that did a virtual route of those cameras, checking and checking constantly, not only were they able to apprehend criminals, but they were also able to proactively **prevent** crime."[85]

145.    Despite nodding in acknowledgement and awareness, Defendants made clear that while they *could*, they, with deliberate indifference and willful misconduct and disregard, affirmatively refused to implement these safety measures in the "prevalent hotspot" where Plaintiff, Jane Doe K.B., was horrifically raped.

146.    Councilman Jones continued, "if I were to say, if I had one wish for your guy, [it] is to increase that particular, um aspect of the cases, the [cameras] are in good places… but if there are real live eyes on, you, you don't just, apprehend criminals, you can work with your boots on the ground with your actual officers to prevent crime. And, um, there was a 24% drop in Baltimore, based on just that utilization and then with actual boots on the ground." [86]

---

[85] *Id.* (emphasis added)
[86] *Id.*

47

Case ID: 230903172

147.   Despite both Defendants Richards and Nestle nodding in acknowledgement and awareness, Defendant Nestle testified that this was never implemented to its capacity in in the "prevalent hotspots", despite Defendant Nestle making clear that Defendant Richards did approve the ability to increase the amount of virtual live eyes on security, and that the lack of security efforts "was not about the money".

148.   And it could not be, given that SEPTA is paying its top executives (inclusive of terminated high-ranking officials)[87] handsome raises and high six-figure salaries.

149.   Consistent with the deliberate indifference of the Defendants, through its administrators, servants, workmen, agents, and/or employees, to the continued unabated violence within the SEPTA-owned property, inclusive of the El, that was documented well prior to the horrific rape of Plaintiff, Jane Doe K.B., by data owned and compiled, yet concealed, by SEPTA, and known publicly as referenced herein and in the testimony of Council Oh, as of October 13, 2021 and for years prior thereto, criminals, like Defendant Ngoy, have been and were permitted and/or enabled to continually and systematically conduct an unfettered reign of violent terror upon innocent riders, like Jane Doe K.B., and employees, within the confines of inadequately secured, inadequately monitored, security-abandoned common areas of "prevalent hotspots" and other areas of SEPTA-owned Property.

150.   In deliberate indifference to the clear and continuing present danger of crime and criminal activity, especially in the face of SEPTA Defendants' concealment and deceit, that has continued to present to riders, like Jane Doe K.B., and employees, within the SEPTA-owned system, the Defendants have, *inter alia,* failed to take any measures whatsoever to curtail the continued unfettered acts of violence, especially in known high-crime areas, like where Jane

---

[87] Transit Talent, Why SEPTA has to pay $450,000 in salary to an executive it terminated in 2021 https://www.transittalent.com/articles/index.cfm?story=SEPTA_Payment_Terminated_Exec_3-20-2023 (last visited September 26, 2023).

Case ID: 230903172

Doe. K.B. was harassed, groped, assaulted, and raped, **for forty minutes**, and as a consequence,
an atmosphere of continued systematic violence by criminals continued to exist at SEPTA-
owned properties, which atmosphere of violent chaos provided a safe haven for continued
criminal rapes, assaults, and batteries against innocent riders such as Jane Doe K.B., which
chaotic violent atmosphere especially flourished and was certain to culminate in additional brutal
assaults and sexual offenses of riders within the confines of the continually and inadequately
secured, inadequately unmonitored, security-abandoned common areas SEPTA.

151.   Councilman Oh also made clear that:

> when [he] visit[ed] a murder location... [where] three women were
> shot, [there was no police presence]... there seems to be less
> attention to the value of having a uniformed police officer, and
> **that is consistent with my conversations with SEPTA workers.**
> While I certainly applaud the money and efforts on social services,
> so long as it does not impede on two things. One is public
> transportation and public safety. If this is an addition to having a
> well-run, efficient, clean and safe transportation system, that is, uh,
> additional things, that is wonderful. However, if it is at the cost of
> public safety such that people don't want to ride, refuse to rise, or
> ride with great fear, then that is a huge problem.

And, evidencing further deliberate indifference, neither Defendant Nestle, Richards, nor Divers
had any idea how much money was being spent on Defendant Allied contract, despite being at a
Joint Committee on Transportation and **Public Safety;** and when specifically asked how many
personnel, it was clear that Defendant Nestle completely diverted the question (in further
concealment) non-responsively stating, instead that SEPTA Defendants will be *"putting out* a
requests for proposal for $4.5 million for coverage on the Market Frankford Line... with
increased security guards, so that number is in the coming year.[88]

---

[88] *See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City
of Philadelphia held on November 29, 2021.

Case ID: 230903172

152.    In fact, evidencing further concealment and deliberate indifference, Defendants

Nestle, Richards, and Divers were insufficiently prepared to answer very simple questions about

safety at the Joint Committee on Transportation and Public Safety Public Hearing and this was

pointed out by Chairman Johnson. However, once pointed out, Defendant Nestle oddly, was able

to offer a response.

153.    Council Oh, in disgust, testified, "Ok so I'm just going to express my concern,

that I heard $3.6 million for social workers, 57 new social workers, and now your talking about 4

million dollars for security guards none of whom can intervene in violent circumstances. They

can call, they can observe they cannot act, and they will not act… and that is not comforting to

riders".[89]

154.    And with regard to deployment and officers on shift in each county, Councilman

Oh made clear that there existed great "discrepancies" in the data with regard to how many

officers "short" SEPTA Defendants have been. This awareness, in light of the representations

and concealment, and poor data collection and maintenance, also evidence Defendants'

deliberate indifference.

155.    Councilman Oh then questioned Defendant Nestle who made several

acknowledgments that clearly evidence deliberate indifference and willful misconduct, namely:

(1) that the 6 am to 12 am shift has 50-60 patrol officers, and the numbers drop to 15 officers for

the overnight shift.

156.    Specifically, for several years prior to October 13, 2021, violence and criminal

misconduct and chaos erupted in hotspots known to be "prevalent hotspots" causing an

unfettered targeting, assaulting, and criminal misconduct committed against passengers, like Jane

Doe K.B., within inadequately secured, inadequately monitored, security-abandoned common

---

[89] *Id.*

50

areas of the SEPTA-owned property known to be "prevalent hotspots".

157.     During the multiple years prior to October 13, 2021, when Plaintiff Jane Doe K.B. was brutally raped, and at all times material hereto, Defendant Richards functioned individually and as CEO and GM of SEPTA, Defendant Divers, functioned individually and as agent of Defendant SEPTA, and for months as Director of Outreach Programs at Defendant SEPTA and leader of SEPTA's SCOPE Program, Defendant Nestel, functioned individually and as Chief of Transit Police for Defendant SEPTA, and the remaining SEPTA Defendants functioned individually and as agents for Defendant SEPTA.

158.     For varying periods of time during the course of multiple years, as referenced herein prior to October 13, 2021, SEPTA Defendants, functioned under color of law, the SEPTA-owned property.

159.     Defendant Allied and Security Defendants were on site or supposed to be on site at the SEPTA-owned property, providing the necessary security to keep riders, like Jane Doe K.B., safe.

160.     For years prior to October 13, 2021, and at all times material hereto, SEPTA Defendants, acted individually and/or through their agents, servants, workmen, and/or employees, under color of state law and authority in performing their job duties in administering to the duties of their respective offices.

161.     At all times material hereto, Defendant Allied and Security Defendants acted as an entity and/or through their agents, servants, workmen, and/or employees, and authority in performing their job duties in administering to their duties.

162.     For years prior to October 13, 2021, and at all times material hereto, as referenced herein a known hotspot at the SEPTA-owned property, like the El, and along the MFL, criminals continued to target and violently brutalize innocent riders, inclusive of customers and employees,

Case ID: 230903172

at the SEPTA-owned property, like the El, and, continued to participate in unfettered brutality inasmuch as for this multiple year period of time prior to October 13, 2021, there was no coordinated effort within, by or amongst the SEPTA Defendants and/or Defendant Allied and/or Security Defendants, as referenced herein to abate crime, coordinate an effort to breakdown the criminal activity at the known "prevalent hotspots", secure or otherwise properly monitor – with the large amount of surveillance cameras -- the common areas where the incidents of violence repeatedly occurred, accurately or routinely memorialize the violent incidents which occurred via accurate and credible reports, or make any concerted effort whatsoever to halt the continued brutality which occurred within the confines of the SEPTA-owned property.

163.   Instead, Defendants affirmatively acted to cover up incidents of violence and failures to address the danger, which placed innocent riders at a greater risk of similar incidents occurring, such that it was foreseeable that Plaintiff Jane Doe K.B. would be attacked in the unmonitored "prevalent hotspot".

164.   Indeed, during the multiple years prior to October 13, 2021, as referenced herein, when an incident of violence was made known to SEPTA Defendants, or solutions discussed, SEPTA Defendants did not abate the violence appropriately and so, the violence continued, enabling Defendant Ngoy, and leading to the brutal rape of Plaintiff, Jane Doe K.B.

165.   In deliberate indifference to the clear and continuing present danger that concealment of critical data and information, particularly pertaining to the violence on or about "prevalent hotspots" like the MFL and the El, riders, like Jane Doe K.B., and SEPTA employees (who are also part of the rider population) continued to ride within the SEPTA-owned property, the Defendants as referenced herein deceitfully failed to take any measures and/or adequate measures whatsoever to curtail the continued unfettered acts of violence on SEPTA-owned property, including locations known and labeled by SEPTA as "prevalent hotspots".

Case ID: 230903172

166.    As a consequence, an atmosphere of continued systematic violence at the "prevalent hotspots", using the MFL and the El, where Jane Doe K.B. was raped, continued to exist on SEPTA-owned property, which atmosphere of violent chaos provided a safe haven for continued criminal assaults and batteries against innocent riders such as Plaintiff, Jane Doe K.B., which chaotic violent atmosphere especially flourished, and was certain to culminate in additional brutal assaults to riders, like Plaintiff, Jane Doe K.B., within the confines of the continually inadequately secured, inadequately monitored, security-abandoned common areas of the SEPTA-owned property.

167.    It was under these circumstances as referenced herein that Plaintiff, Jane Doe K.B., rode the SEPTA-owned property, as a passenger on October 13, 2021.

168.    On the date of October 13, 2021, in the same SEPTA-owned area – along the MFL in the El –a known "prevalent hotspot" where passengers had previously been brutalized and sexually abused by criminals, Plaintiff Jane Doe K.B. was subjected to criminal misconduct, raped, and left unconscious in the same unsecured, unmonitored, security-abandoned common area that other brutal beatings, sexual misconduct, and/or criminal misconduct had occurred years and months prior to October 13, 2021.

169.    Despite having cameras compatible with the Real Time Crime Center, in South Philly, which is connected to SEPTA,[90] and the ability to live view incidents via the use of the cameras,[91] *__for forty minutes__*, Plaintiff Jane Doe K.B. was being brutally attacked, until she went into an unconscious state, wherein Jane Doe K.B. — unable to fight back, physically or verbally resist, ambulate, or move, no one came to her aid; and for about eight minutes, Defendant Ngoy can be seen on SEPTA-owned surveillance, with his pants down, her pants down, him thrusting

---

[90] *See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City of Philadelphia held on November 29, 2021.

[91] *Id*. __According to Chief Nestle, they affirmatively use this feature they use in limited fashion__.

Case ID: 230903172

his hips at Plaintiff's genital region, Plaintiff no longer moving, and Defendant Ngoy **actively raping her**.

170.   This all occurred while all Defendants acted with deliberate indifference to Plaintiff, Jane Doe K.B.'s, safety and well-being.

171.   At 9:56pm, a Defendant SEPTA Agent called SEPTA police and reported the incident, only initially stating that "something is going on", and then stating that the man was taking all of his clothes off, and that he was taking his penis out.

172.   Consistent with the concealing and deceptive culture, the Defendant SEPTA Agent, at no time, reported, that a woman had been actively resisting and struggling against the harassing and sexually explicit acts of Defendant Ngoy, for forty minutes, while she was on the 911 call.

173.   Additionally, at that time no Defendant SEPTA agents offered aid to Plaintiff, a SEPTA passenger, who, at *least* at the time of the 911 call had to see, or **was capable of seeing and should have seen**, the thirty or so minute interchange between Plaintiff and Ngoy wherein she was clearly resisting his unwanted attacks and advances.

54

Case ID: 230903172



Security Cameras in Use

[92]

174.    Despite Defendant Ngoy's misconduct being in clear violation of SEPTA's Code of Conduct, specifically the Rule that mandates, that "[n]o person may obstruct the free movement of any individual by lying or sitting, or placing personal belongings on the platform floor, the concourses, stairs or landings at a transit or railroad station" and "[u]se of SEPTA services and facilities is for transportation purposes only" put in place "[t]o ensure that transit passengers enjoy a safe, secure, comfortable, and inviting travel experience at any SEPTA station or vehicle".

175.    Notably, despite SEPTA Defendants' presence on the SEPTA train, observing Defendant Ngoy pull down his pants, pull down Plaintiff Jane Doe K.B.'s pants, pull out his penis, and **actively rape Plaintiff, as observed by thrusting his pelvis back and** forth, no one reported a rape.

176.    Upon the arrival of Defendants Schrillo, Buck, Barr, and Barone's arrival, Defendant Ngoy was actively raping Plaintiff Jane Doe K.B., as Defendant SEPTA Agent, who failed to intervene or properly report the crime, or even summon an ambulance or input the

---

[92] SEPTA, Code of Conduct, https://www5.septa.org/wp-content/uploads/policy/Code-of-Conduct_18x24_v3.pdf (last visited September 27, 2023).

55

Case ID: 230903172

suspicions on the Transit Watch Application, in violation of Defendant SEPTA Policy.This

failure to respond to ongoing abuse is consistent with a pattern of deceit in veiling continued

unabated violence on SEPTA-owned property, in known "prevalent hotspots" that has been

crime-ridden for several years *prior* to this horrific evening that will forever be seared in

Plaintiff's mind.

177.    Importantly, upon information and belief, despite the concealed and veiled report

being made, at no time, was the security footage reviewed in real time to best assess the situation

at hand, in a known "prevalent hotspot", as Defendant Nestle testified was the procedure upon a

Defendant SEPTA agent receiving a dispatch call of the nature described herein.

178.    If this was  done, and if Defendants were not actively covering up incidents of

violence, more intervention could have resulted for Jane Doe K.B., and likely would have

resulted in her **not** being raped.

179.    This is particularly true, given, as Defendant Nestle testified, that the basis of

deployment in SEPTA-owned areas is based on SEPTA's reliance "very heavily on data

analysis, and that's calls for services, um, reported crime both on the system and around the

system, uh, information from employees, uh ridership numbers. All of this information goes into,

uh, the pot, and when we consider where we need to put people, um, and information from our

partners… and we change it day to day."[93]

180.    Indeed, as stated herein, some violent incidents were not reported by SEPTA

Defendants.

181.    Consistent with the pattern of deceit in veiling violence at the SEPTA-owned

property and failing to address true dangers, Defendants placed Plaintiff, and other riders, at a

greater risk of similar incidents such that it was wholly foreseeable and sadly, expected, that

---

[93] *See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City
of Philadelphia held on November 29, 2021.

Case ID: 230903172

Plaintiff would be horrifically assaulted and raped on the MFL, at the time she was raped, for the length of time she was raped, and without detection, intervention, or rescue.

182.    Moreover, despite the call, and misreport of a man disrobing (when it should have been for a man raping a woman), and Chief Nestle asserting that Defendant SEPTA has, through a response camera, the capability to, after receiving a call for an incident reviewing the cameras immediately,  "get a picture of any offender and then sends that picture to officers working on the line… so they have an idea of what is going on.. before they are even arriving" these efforts were not deployed for Plaintiff Jane Doe K.B.[94]

183.    As outlined above, the SEPTA Defendants fostered an atmosphere of violent chaos by providing a safe haven for continued criminal assaults and batteries in known "prevalent hotspots" of SEPTA-owned property against riders, like Plaintiff Jane Doe K.B., and employees, which chaotic violent atmosphere expectedly flourished and was certain to culminate in the additional horrific and violent rape of Plaintiff, Jane Doe K.B., on October 13, 2021.

184.    SEPTA Defendants willfully acted with deliberate indifference and utter disregard for Plaintiff Jane Doe K.B.'s safety in deliberate indifference and affirmatively placed Plaintiff Jane Doe K.B. in position of danger when, *inter alia*, SEPTA had knowledge of danger of areas (as labeled by SEPTA Defendants as "prevalent hotspot"), concealed and veiled the full extent of the inherent danger, particularly to female riders, yet **stranded** Plaintiff Jane Doe K.B. without any means to be safe.

185.    SEPTA watched and left Plaintiff Jane Doe K.B. **stranded** for 40 minutes as she was being assaulted.

186.    SEPTA watched and left Plaintiff Jane Doe K.B. **stranded** for eight minutes as she was actively being raped amid an atrocious 40-minute long physical, sexual and verbal

---

[94] *Id.*

57

assault.

187.    By asserting that safety is their priority and inferring that the MFL is safe while concealing and/or veiling the true extent of the danger; by developing a Code of Conduct yet failing to properly train and/or implement it; by covering up or failing to report, acknowledge, or address the incidents of violence, and claiming to enforce additional safety measures, Defendants affirmatively placed Plaintiff Jane Doe K.B. in a dangerous position and/or at risk of similar criminal violent incidents, that was foreseeable.

188.    Hence Ngoy's brutal attack and rape of Plaintiff Jane Doe is, *at a minimum*, a fairly direct result of Defendants' acts of, *inter alia*, ignoring, concealing, and failing to address the violent attacks of passengers and employees in known "prevalent hotspots", such as the Market Frankford Line the El, and other SEPTA-owned property.

189.    Importantly, in his statement to the Police, Defendant Schrillo made clear that he knew Defendant Ngoy, stating in the affirmative when asked whether he had "seen this guy before".

190.    In light of Ngoy's criminal history, inclusive of prior sexual misconduct, Defendant Schrillo's knowledge of Ngoy will be explored further through discovery. However, he, unquestionably, could be connected  to the slew of sexual offenses that occurred on the MFL prior to the horrific and brutal rape that Plaintiff endured.

191.    SEPTA Defendants foresaw the danger of unabated violence and acted with deliberate indifference and/or willful misconduct when they concealed the reports and complaints, as stated herein, and/or failed to address the  known danger in the "prevalent hotspots", like the MFL and the El, that were inadequately monitored and/or unmonitored, and/or inadequately secure and/or secured.

Case ID: 230903172

192.    At all times pertinent hereto, Defendants are liable for the injuries and damages suffered by Plaintiff.

193.    At all relevant times hereto, Defendants owed Plaintiff the highest duty of care.

194.    At all relevant times hereto, Plaintiff and the SEPTA Defendants and Security Defendants shared a special relationship which established a duty to protect Plaintiff from the intentional criminal acts of others, including Defendant Ngoy, pursuant to Restatement (Second) of Torts § 314A.

195.    At all times relevant hereto, Defendants violated §314A of the Restatement (Second) of Torts as described more fully herein.

196.    At all relevant times hereto, Defendants were grossly negligent because of Defendants' failure to protect Plaintiff from the intentional criminal acts of Defendant Ngoy and as more fully described herein.

197.    At all relevant times hereto, Defendants acted with willful misconduct as more fully described herein.

198.    At all relevant times hereto, Defendants knew or should have known that there was a likelihood of criminal sexual activity and violence occurring at/around SEPTA stations and/or rail lines and Defendants failed to take reasonable steps to protect Plaintiff from these known or foreseeable dangers.

199.    At all relevant times hereto, the negligence, gross negligence, and recklessness of Defendants caused harm to Plaintiff.

200.    At all relevant times hereto, Defendants demonstrated a reckless disregard and conscious indifference to the rights and safety of its passengers, like Plaintiff, entrusted to it.

201.    The negligence, gross negligence and recklessness of Defendants directly and proximately caused Plaintiff's injuries.

Case ID: 230903172

202.    The violations of Defendants are not subject to immunities or protections under the Pennsylvania Tort Claims Act., pursuant to 42 Pa.C.S.  § 8542.


## COUNT I

**VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY AS A RESULT OF A STATE-CREATED DANGER ENFORCEABLE VIA 42 U.S.C. § 1983 PLAINTIFF v. SEPTA DEFENDANTS**

203.    Plaintiff hereby incorporates all preceding paragraphs of this Complaint by reference the same as though fully set forth herein.

204.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions of SEPTA Defendants that resulted in the injuries suffered by Plaintiff, Jane Doe K.B.

205.    All acts taken by SEPTA Defendants were taken under color of state law as defined by 42 U.S.C. § 1983, were acting under the pretense and color of law in their official capacities, and under the pretense of the statutes, ordinances, policies, practices, customs, regulations and/or usages of SEPTA Defendants and/or the Commonwealth of Pennsylvania.

206.    SEPTA Defendants were all "persons" pursuant to 42 U.S.C. § 1983.

207.    More specifically, at all times relevant hereto, Plaintiff, Jane Doe K.B. possessed both substantive and procedural due process rights to be free from state occasioned and/or created dangers which caused harm to her bodily integrity and human dignity, and which are protected by the United States Constitution.

208.    It was an unreasonable, unacceptable, and in willful violation of Defendants' duties and responsibilities of assuring safety, being aware of how to abate safety, being aware of

60

the known dangers, yet failing to implement those safety measures and/or developing an adequate safety plan, failing to implement a proper safety plan, and/or failing to enforce a proper safety, as described more fully herein.

209.    Given the history of crime, violence, knowledge and awareness, as stated herein and all of which Defendants were aware of, and given that Plaintiff, Jane Doe K.B., was clearly a target, particularly in light of her being a female rider, riding alone, it was clearly foreseeable to Defendants that causing the concealment of violent incidents and failing to address the danger, caused Plaintiff, Jane Doe K.B. to take the El without the necessary security provisions in place, therein exposing Plaintiff, Jane Doe K.B. to a substantial risk of serious harm.

210.    Despite Defendants' knowledge and the clear foreseeability of harm to Plaintiff, Jane Doe K.B. inflicted by Defendants, Defendants concealed pertinent and critical information and failed to take reasonable steps and enact and implement reasonable protective measures, policies, plans, practices, and/or procedures to avoid the harm, despite having the capability to implement clear safety measures to abate and prevent crime.

211.    In concealing the true risk of harm, inclusive of the prevalence of violence along the MFL and El, where Plaintiff, Jane Doe K.B., was brutally attacked and raped, and veiling critical information and failing to place safety measures in place, Defendants acted with a degree of culpability that shocks the conscious and acted with deliberate indifference to and willful disregard of Plaintiff, Jane Doe K.B.'s health, safety, and rights.

212.    At all times relevant hereto, Defendants were aware of and acted with deliberate indifference to the extreme and unacceptable dangers posed to Plaintiff, Jane Doe K.B. by riding along an unsecure, unmonitored "prevalent hotspot" known by SEPTA Defendants to be crime-ridden.

Case ID: 230903172

213.    As a result of the long history of assaults carried out in those "prevalent hotspots", and Defendants' knowledge (and disturbing concealment) of same, a relationship existed between Defendants and Plaintiff, Jane Doe K.B. such that Plaintiff, Jane Doe K.B. was a foreseeable victim of Defendants affirmative and authorized acts and omissions.

214.    Despite Defendants' assurances and representations, they either failed to develop, implement, and enforce a safety plan and/or failed to adequately develop, implement, and enforce a safety plan.

215.    Defendants thus affirmatively used their authority in a way that created a danger to Plaintiff, Jane Doe K.B. and/or rendered Plaintiff, Jane Doe K.B. more vulnerable to the danger presented within Defendants' known "prevalent hotspots".

216.    As a direct and proximate result of the Defendants unconstitutional acts as described herein, Plaintiff, Jane Doe K.B. suffered severe and irreparable injuries and violation of her Constitutional rights as described and averred herein.

217.    Defendants knew or should have known that their actions and/or inactions would result in injury to and denial of the constitutional rights of Plaintiff, Jane Doe K.B.

218.    As a direct and proximate result of Defendants' negligence, gross negligence, reckless conduct, willful and wanton disregard for the safety of Plaintiff, Jane Doe K.B., and deliberate indifference to the health and safety of Plaintiff, Jane Doe K.B., Plaintiff, Jane Doe K.B. was caused to suffer the severe and irreparable injuries and damages alleged herein and the deprivation of her liberty interest and was caused to suffer injury to her human dignity and bodily integrity, without due process of law guaranteed by the Fourteenth Amendment of the United States Constitution.

219.    Defendants' denial and violation of Plaintiff, Jane Doe K.B.'s rights under the Fourth and Fourteenth Amendments to the United States Constitution was egregious, irrational

Case ID: 230903172

and objectively unreasonable.

      **WHEREFORE**, Plaintiff demands judgment in her favor for compensatory and punitive damages against Defendants, in a sum in excess of $50,000, plus allowable taxable costs, interest, delay damages, and such other relief as this Honorable Court deems appropriate.

**COUNT II – 42 U.S.C. §1983 – FAILURE TO INTERVENE**

**PLAINTIFF, JANE DOE K.B. v. SEPTA DEFENDANTS**

      220.   Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

      221.   By their conduct and under color of state law, SEPTA Defendants and their individual agents acting within the scope of their employment with Defendants, had opportunities to intervene on behalf of Plaintiff, Jane Doe K.B., to prevent and stop the close to hour long horrific assault and rape endured by Plaintiff on the El, and to prevent the violation of her clearly established constitutional right, but, with deliberate indifference, declined to do so.

      222.   Defendants concealed, with deliberate indifference to crucial information, that if not veiled, *__would__* have provided a safe setting as represented by SEPTA Defendants.

      223.   Defendants failed, with deliberate indifference, to address the danger they concealed, in addition to properly train and supervise staff, to thoroughly implement safety measures, and to act and/or intervene, as appropriate, to abate and prevent criminal activity, so as to provide a safe setting as represented by SEPTA Defendants.

      224.   As a proximate result of Defendants' policies, practices and customs, the staff, agents, and/or employees at SEPTA-owned property, including all SEPTA Defendants, in their individual and official capacity, acting under color of state law, subjected Plaintiff to bodily injury and harm, a failure to protect her from harm, and other abuses alleged herein.

Case ID: 230903172

225.    Defendants' failures to act and/or intervene violated Plaintiff's clearly established constitutional right and liberty interest in personal bodily integrity as guaranteed under the Fourteenth Amendment. No reasonable employee/agent of Defendants would have believed that deliberately failing to intervene, including giving a wholly inaccurate report, and thereby permitting such abuse to occur, was lawful.

226.    Defendants' acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries on SEPTA-owned property, are therefore liable to her under 42 U.S.C. § 1983.

227.    Defendants knew, or should have known, that their conduct would result in Plaintiff's harm and damages.

218.    Defendants knew or should have known that their actions and/or inactions would result in injury to and denial of constitutional rights of Plaintiff, Jane Doe K.B.

228.    As a direct and proximate result of Defendants' negligence, gross negligence, reckless conduct, willful and wanton disregard for the safety of Plaintiff, Jane Doe K.B., and deliberate indifference to the health and safety of Plaintiff, Jane Doe K.B., Plaintiff, Jane Doe K.B. was caused to suffer the severe and irreparable injuries and damages alleged herein and the deprivation of her liberty interest and was caused to suffer injury to her human dignity and bodily integrity, without due process of law guaranteed by the Fourteenth Amendment of the United States Constitution.

229.    Defendants' denial and violation of Plaintiff, Jane Doe K.B.'s rights under the and Fourteenth Amendments to the United States Constitution was egregious, irrational and objectively unreasonable.

**WHEREFORE**, Plaintiff demands judgment in her favor for compensatory and punitive damages against Defendants, in a sum in excess of $50,000, plus allowable taxable costs,

Case ID: 230903172

interest, delay damages, and such other relief as this Honorable Court deems appropriate.

## COUNT III – NEGLIGENCE, GROSS NEGLIGENCE, AND RECKLESSNESS

### PLAINTIFF v. ALL DEFEDANTS

230.     At all times material hereto the Defendant Richards acted in the course and scope of her employment with SEPTA under color of state law as CEO and GM of SEPTA and in concert with the Defendants, Defendant Divers, functioned individually and as agent of Defendant SEPTA, and for months as Director of Outreach Programs at Defendant SEPTA and leader of SEPTA's SCOPE Program. Defendant Nestel functioned individually and as Chief of Transit Police for Defendant SEPTA, and SEPTA Defendants functioned individually and as SEPTA agent, employee and/or staff member.

231.     The malicious actions of the Defendants were undertaken in bad faith and in a deliberate indifference to and callous disregard of Plaintiff, Jane Doe K.B.'s Constitutional right to bodily integrity under the Due Process Clause of the Fourteenth Amendment, and under 42 U.S.C. Section 1983, 42 Pa. C.S.A. Section 8550, 42 Pa. C.S.A. Section 8542, as well as the Fourteenth Amendment of the United States Constitution and the Constitution of the Commonwealth of Pennsylvania, in that these Defendants:

a.      Were in deliberate and indifference to, and in callous disregard of Plaintiff's constitutional right to bodily integrity concealed and/or underreported, despite having the data and complaints to support violent, vicious attacks in "prevalent hotspots", like the MFL and the El, and other SEPTA-owned property for several years, making certain to result in the additional crime and horrific rape that occurred to Plaintiff, Jane Doe K.B., on October 13, 2021, as per the findings stated herein and more to be revealed during discovery;

b.      countenanced, tolerated, veiled, underreported, concealed, and thereby fostered a certain level of violence within "prevalent hotspots", like the MFL and the El, and

other SEPTA-owned property for several years making certain to result in the horrific assault and rape to Plaintiff, Jane Doe K.B., on October 13, 2021, as per the findings stated herein and more to be revealed during discovery;

        c.      conspired in callous disregard for the safety of passengers, like Jane Doe K.B. within SEPTA-owned property, such as "prevalent hotspots", like the Market Frankford Line and the El, to cover-up continued, repeated, systematic violence within "prevalent hotspots", like the MFL and the El, and other SEPTA-owned property several years making certain to result in the horrific assault and rape to Plaintiff, Jane Doe K.B., on October 13, 2021, as per the findings stated herein and more to be revealed during discovery;

        d.      repeatedly trivialized the nature, extent, and repetition of repeated beatings of innocent passengers, in "prevalent hotspots", like the MFL and the El, and other SEPTA-owned property, as per the findings stated herein and more to be revealed during discovery;

        e.      intentionally veiled and failed to report repeated incidents of violence against passengers and/or employees in "prevalent hotspots", like the MFL and the El, and other SEPTA-owned property, as per the findings stated herein and more to be revealed during discovery;

        f.      intentionally, recklessly, and with willful misconduct, failed to heed repeated acts, reports, and/or complaints of violence in "prevalent hotspots", like the MFL and the El, and other SEPTA-owned property, against other innocent SEPTA riders, including Jane Doe K.B., and/or SEPTA employees, as per the findings stated herein and more to be revealed during discovery;

        g.      intentionally, recklessly, and/or with willful misconduct, failed to memorialize, capture, report, follow through, and/or follow the requisite actions in response to acts, reports, and/or complaints of violence in known "prevalent hotspots", like the Market

Case ID: 230903172

Frankford Line and the El, and other SEPTA-owned property, or even accurately report the crime, like Defendant SEPTA employee, for innocent riders experiencing violence in "prevalent hotspots", like the Market Frankford Line and the El, and other SEPTA-owned property for years predating the rape and assault of Plaintiff Jane Doe K.B.;

      h.    intentionally, recklessly, and/or with willful misconduct, failed to report repeated incidents of violence against passengers and/or employees in "prevalent hotspots", like the Market Frankford Line and the El, and other SEPTA-owned property, as per the findings stated herein and more to be revealed during discovery;

      i.    recklessly and with willful misconduct, allowed, in deliberate indifference to and callous disregard for the Constitutional rights to bodily integrity under the Due Process Clause of the Fourteenth Amendment of the United States and Commonwealth of Pennsylvania Constitution and fostering an environment of unabated violent terror to continue in the SEPTA-owned property, specifically employees in "prevalent hotspots", like the MFL and the El, and other SEPTA-owned property several years, including, but not limited to, the incident referenced herein involving Plaintiff, Jane Doe K.B.;

      j.    intentionally, recklessly, and/or with willful misconduct, failed to suspend criminal activity and/or abate violence in known "prevalent hotspots", like the MFL and the El, and other SEPTA-owned property, were passengers had been repeatedly attacked for years predating the horrific rape of Jane Doe K.B., thereby harboring an environment of criminal activity and violence against other innocent riders, including Jane Doe K.B., as said individuals who will be identified in school records, police records or identified through discovery of all Defendants;

      k.    permitting known "prevalent hotspots", like the MFL and the El, and other SEPTA-owned property, when they knew that said areas presented a clear and present danger to

Case ID: 230903172

other passengers riding on SEPTA-owned property including Plaintiff, Jane Doe K.B., to be improperly secured and/or monitored and/or unmonitored and/or unsecure;

    l.    intentionally, recklessly, and/or with willful misconduct, failed to correctly memorialize the instances of violence on SEPTA-owned property in an effort to veil the long-continued violence on SEPTA-owned property, as identified through discovery of all Defendants and as per the findings stated herein and more to be revealed during discovery;

    m.    engaging in a conspiracy to veil the continued repeated acts of violence in known areas of SEPTA-owned property in an effort to insulate themselves from public scrutiny regarding the clear and present danger that innocent passengers, like Jane Doe K.B., and SEPTA employees, faced and continue to face, at the SEPTA-owned property for years, as per the findings stated herein and more to be revealed during discovery;

    n.    intentionally, recklessly, and /or with willful misconduct, in deliberate indifference to and in callous disregard of the Constitutional rights to bodily integrity of riders (customers and employees, alike) like Plaintiff, Jane Doe K.B., on SEPTA-owned property, specifically in "prevalent hotspots", like the MFL and on the El,;

    o.    repeatedly, intentionally, recklessly, and/or with willful misconduct, disregarding reports and/or warnings of continued violence and/or of inadequate security measures, in known "prevalent hotspots" in SEPTA-owned property for years thereby fostering an environment conducive to continued violence and harboring criminals and criminal activity within the SEPTA-owned property, conduct certain to result in additional violence, as is seen and within the SEPTA-owned property and as occurred to Plaintiff, Jane Doe K.B., on October 13, 2021, as per the findings stated herein and more to be revealed during discovery;

    p.    fostering a criminally violent environment resulting in continued unabated acts of violence by a known group of SEPTA-owned property for years presenting a clear and

present danger to innocent customers, like Plaintiff Jane Doe K.B., and employees, by covering up acts of repeated violence for years, as per the findings stated herein and more to be revealed during discovery;

q.    repeatedly turning a blind eye to passengers and/or employees, viciously attacked for over years by failing to accurately and/or document and/or report at all the injuries suffered by passengers and/or employees as a consequence of brutal attacks known "prevalent hotspots", like the Market Frankford Line and the El, and other SEPTA-owned property, in an effort to veil the long-standing violence within the School so as to avoid public, municipal, police and Commonwealth of Pennsylvania scrutiny of the complete lack of safety and criminal environment fostered within the SEPTA-owned property;

r.    conspiring amongst SEPTA Defendants, to veil, trivialize, and completely ignore and withhold from public scrutiny the known and unabated violence of innocent SEPTA-riders and/or employees, in known "prevalent hotspots", including the Market Frankford Line and the El, amounting to a deliberate conspiratorial indifference to the safety and well-being of riders at the SEPTA-owned property including Plaintiff, Jane Doe K.B.;

s.    intentionally, recklessly, deliberately, and/or with willful misconduct failed to and refused to enforce the Code of Conduct, Employee Requirements, and other disciplinary responses and procedure protocol of SEPTA, to identify, punish, and remove known "prevalent hotspots", including the MFL and the El, where violence on has been occurring for years thereby fostering an environment of violence and chaos within SEPTA-owned property rendering it unsafe for the activities for which it was intended and generally used (riding safely to and from destinations), for which conduct sovereign immunity will not lie;

t.    conspiring with the Defendants, to participate in a conspiracy of deceit and silence regarding repeated acts of violence upon innocent riders, like Plaintiff K.B., and

employees, in known "prevalent hotspots", including the MFL and the El, in an effort to veil the violence repeatedly occurring at the SEPTA-owned property from public scrutiny;

u.    intentionally, recklessly, and/or with willful misconduct, failed to identify and remove crime repeatedly brutalizing innocent riders, like Plaintiff K.B., and employees, for a years, as per the findings stated herein and more to be revealed during discovery;

v.    intentionally, recklessly, and/or with willful misconduct, failed to develop any type of task force mechanism and/or concerted effort to isolate the known "prevalent hotspots", like the Market Frankford Line and the El, and other SEPTA-owned property, who repeatedly brutalized innocent riders, like Plaintiff K.B., and employees, for years when the Defendants knew that such areas presented a clear and present danger, particularly at the hour Plaintiff was raped, to other riders upon the SEPTA-owned property including Plaintiff, Jane Doe K.B., as per the findings stated herein and more to be revealed during discovery;

w.    intentionally, recklessly, and/or with willful misconduct, and in deliberate disregard of Plaintiff's Constitutional right to bodily integrity under the Due Process Clause of the Fourth and Fourteenth Amendments of the United States and Pennsylvania Constitutions in failing to make any effort whatsoever to increase police presence, including failing to have sufficient police presence despite having the budget for it,[95] in the known known "prevalent hotspots", like the MFL and the El, and other SEPTA-owned property, despite policy and SEPTA police deployment and security strategies requiring same, especially for hours when children are let our of school; and

x.    participating in a conspiracy of silence to veil the continued violence by a known group of SEPTA-owned property riders for years in failing to report incidents of brutal violence by the known "prevalent hotspots", like the Market Frankford Line and the El, and

---

[95] (*See* Testimony, Public Hearings, Joint Committee on Transportation and Public Safety of the Council of the City of Philadelphia held on November 29, 2021).

Case ID: 230903172

other SEPTA-owned property;

232. As a consequence and result of the aforesaid deliberately indifferent and callous conduct of the Defendants in disregard of the Constitutional rights of Plaintiff, Jane Doe K.B., Plaintiff, Jane Doe K.B., was caused to injury as a result of Defendants acts and/or omissions on October 13, 2021.

233. At all material times, Defendants owed a duty to protect Plaintiff as a passenger on the inbound El travelling on the Market-Frankford Line.

234. The negligence, gross negligence, carelessness, recklessness and/or willful misconduct of Defendants include, but not limited to:

a. Creating, permitting, allowing, and/or enabling an environment overwhelmed by violence and criminal acts.

b. Failing to disclose the dangerous propensities that SEPTA knew or should have known existed.

c. Failing to protect Plaintiff.

d. Failing to hire an adequate number of SEPTA police officers.

e. Failing to properly train SEPTA police officers.

f. Failing to adequately supervise and monitor SEPTA stations and/or rail lines.

g. Failing to appropriately staff the virtual cameras;

h. Failing to adequately supervise and monitor SEPTA security cameras.

i. Failing to routinely inspect, check and confirm safekeeping of its passengers, including Plaintiff.

j. Failing to implement reasonable and appropriate safeguards to ensure the safety of its passengers, including Plaintiff.

Case ID: 230903172

k.      Failing to warn its passengers, including Plaintiff, of the dangerous conditions existing at/around SEPTA stations and/or rail lines.

l.      Concealing and/or veiling pertinent and critical information pertaining to the violence that existed and/or existing on SEPTA-owned property.

m.      Ensure the proper operation of the El, inclusive of the cameras attached thereto.

n.      Permitting a dangerous conditions to remain on the El that Plaintiff jane Doe took, which created a reasonably foreseeable risk that she would be raped, despite having actual notice that she was being attacked and raped, and knowing the offender, at more than sufficient time prior to the rape to have taken measures to protect against the dangerous conditions.

235.    Defendants breached their duty to Plaintiff by failing to protect Plaintiff from the foreseeable harm of the physical and sexual abuse and/or misconduct of Defendant Ngoy.

236.    As a result of the Defendants' conduct, as outlined herein, Plaintiff was violated and forced to undergo vile atrocious acts of sexual abuse and as a result has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

237.    The harms, injuries, losses, and damages suffered by Plaintiff, and that she continues to suffer from, were directly and proximately caused by the negligence, willful misconduct, wanton, recklessness, and outrageous conduct of Defendants.

238.    Because of the grossly negligent, wanton, and outrageous conduct set forth in this complaint, Plaintiff is entitled to punitive damages.

Case ID: 230903172

WHEREFORE, Plaintiff demands judgment in her favor for compensatory and punitive damages against Defendants, in a sum in excess of $50,000, plus allowable taxable costs, interest, delay damages, and such other relief as this Honorable Court deems appropriate.

## COUNT VI – CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. § 1983 SUBSTANTIVE DUE PROCESS & FAILURE TO TRAIN AND SUPERVISE & STATE-CREATED DANGER

### PLAINTIFF v. SEPTA DEFENDANTS

239.    Plaintiff incorporates herein by reference all paragraphs of this Complaint as is fully set forth herein.

240.    As a result of the Defendants' conduct, as outlined herein, Plaintiff was violated and forced to undergo vile atrocious acts of sexual abuse and as a result has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

241.    The harms, injuries, losses, and damages suffered by Plaintiff, and that she continues to suffer from, were directly and proximately caused by the negligence, willful misconduct, wanton, recklessness, and outrageous conduct of Defendant.

242.    Because of the grossly negligent, wanton, and outrageous conduct set forth in this complaint, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff demands judgment in her favor for compensatory and punitive damages against Defendants, in a sum in excess of $50,000, plus allowable taxable costs, interest, delay damages, and such other relief as this Honorable Court deems appropriate.

## COUNT V – 42 U.S.C. §1983 – DEPRIVATION OF RIGHTS BY VIRTUE OF A SPECIAL RELATIONSHIP

Case ID: 230903172

**PLAINTIFF, JANE DOE K.B. v. SEPTA DEFENDANTS**

243.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

244.    As set forth herein, this is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions by Defendants that resulted in severe injuries to Plaintiff.

245.    At all times relevant hereto, SEPTA Defendants were all "persons" and were acting under "color of state law" pursuant to 42 U.S.C. §1983 by providing care, custody and/or control over Plaintiff.

246.    Defendants' constitutional torts are not governed or limited in any way by 42 Pa.C.S. §8541, *et seq.*, or 42 Pa.C.S. § 8521, *et seq.*

247.    The specific harms to which Defendants exposed Plaintiff were foreseeable and direct in that Defendants knew that allowing continuous and regular violence to occur to passengers, like Jane Doe K.B., and SEPTA employees, at SEPTA-owned property, particularly the El and other hotspots, would result in severe and lasting harm to Plaintiff.

248.    At all times material hereto, Defendants were bound by various policies, rules, and regulations for the operations on SEPTA vehicles.

249.    In direct contravention and in violation of those policies, rules, and regulations as set forth above, and, upon information and belief, in violation of SEPTA's own rules, regulations, and policies, Defendants recklessly and with willful misconduct subjected Plaintiff to physical and psychological harms described herein, even though such harms were foreseeable.

250.    At all times relevant hereto, a "special relationship" existed between Defendants and Plaintiff, for purposes of 42 U.S.C. § 1983.

Case ID: 230903172

251.    Defendants, while acting under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference and/or with willful misconduct to Plaintiff's rights, violated 42 U.S.C. § 1983 and deprived Plaintiff of her rights as guaranteed under the Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law in that these Defendants without lawful basis caused the aforementioned injuries and damages to Plaintiff as described herein, in violation of the aforesaid guaranteed rights as follows and upon information and belief:

   a. Failing to adhere to acceptable standards;

   b. Negligently, carelessly, recklessly, and/or with willful misconduct, concealing critical information and/or placing Plaintiff in harm's way, when they knew or should have known of the violent propensities and dangers to her;

   c. Failing to exercise reasonable care with respect to Plaintiff and other passengers, and employees;

   d. Permitting and/or otherwise causing Plaintiff to be exposed to the harms and dangers within SEPTA-owned property as described herein, despite the dangers being known and obvious;

   e. Permitting and/or otherwise causing Plaintiff to be exposed to sexual, physical, and psychological abuse;

   f. Failing to properly report the crime being committed against Plaintiff;

   g. Failing to intervene timely to aid and/or rescue Plaintiff;

   h. Such other deliberately indifferent, reckless, willful and/or wonton misconduct resulting in the violation of Plaintiff's rights that shall be revealed through discovery prior to trial.

Case ID: 230903172

252.     Defendants' aforesaid conduct, initiated under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference violated 42 U.S.C. § 1983 and deprived Plaintiff of her rights as guaranteed under the Fourteenth Amendment to U.S. Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law without lawful basis, thus causing injuries and damages to Plaintiff as aforesaid.

253.     As a result of the Defendants' conduct, as outlined herein, Plaintiff was violated and forced to undergo vile atrocious acts of sexual abuse and as a result has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

254.     The harms, injuries, losses, and damages suffered by Plaintiff, and that she continues to suffer from, were directly and proximately caused by the negligence, willful misconduct, wanton, recklessness, and outrageous conduct of Defendant. Because of the grossly negligent, wanton, and outrageous conduct set forth in this complaint, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff demands judgment in her favor for compensatory and punitive damages against Defendants, in a sum in excess of $50,000, plus allowable taxable costs, interest, delay damages, and such other relief as this Honorable Court deems appropriate.

## COUNT VI– 42 U.S.C. §1983 – DEPRIVATION OF RIGHTS BY VIRTUE OF A STATE CREATED DANGER

### PLAINTIFF, JANE DOE K.B. v. SEPTA DEFENDANTS

Case ID: 230903172

255.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

256.     As set forth herein, this is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions by Defendants that resulted in severe injuries to Plaintiff.

257.     At all times relevant hereto, Defendants were each "persons" pursuant to 42 U.S.C. §1983 as all were providing care, custody and/or control over Plaintiff.

258.     The specific harms to which Defendants exposed Plaintiff were foreseeable and direct in that they knew that allowing violence to occur to Plaintiff and other riders at SEPTA-owned property would result in severe and lasting harm to Plaintiff.

259.     In direct contravention and violation of the Fourteenth Amendment as set forth herein and, upon information and belief, in violation of their own policies and regulations, Defendants recklessly, willfully and with deliberate indifference, sexually, physically, verbally, and psychologically abused Plaintiff.

260.     At all times relevant hereto, SEPTA Defendants were acting under "color of state law" for purposes of 42 U.S.C. § 1983.

261.     Defendants, while acting under color of state law, unlawfully, and/or unreasonably, willfully, recklessly, maliciously and/or with deliberate indifference to Plaintiff's rights, violated 42 U.S.C. §1983 and deprived Plaintiff of her rights as guaranteed under the Fourteenth Amendment to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law in that these Defendants, without lawful basis, caused the aforementioned injuries and damages to Plaintiff by creating the danger to which Plaintiff was exposed, in violation of her aforesaid guaranteed rights, as set forth herein.

77

262.     The danger created by Defendants, as set forth herein, was foreseeable and direct.

263.     Through their failures, affirmative authoritative acts, and omissions as set forth herein, Defendants created a degree of culpability that shocks the conscience.

264.     In creating the danger as set forth above, Defendants acted in a willful disregard for the safety of Plaintiff.

265.     Defendants' acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and Defendants are therefore liable to her under 42 U.S.C. § 1983.

### COUNT V – NEGLIGENT FAILURE TO RESCUE

### PLAINTIFF v. ALL DEFENDANTS

266.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

267.     The negligence and recklessness of Defendants in directly and proximately causing the injuries and damages to Plaintiff, described herein, includes:

   a.  failing to take reasonable and necessary steps to rescue Plaintiff after placing her in a position of harm;

   b.  failing to exercise reasonable and necessary steps to prevent further harm when knowing that Plaintiff was in danger;

   c.  failing to take reasonable and necessary steps to give aid or assistance to Plaintiff to prevent further harm;

   d.  failing to take reasonable and necessary steps to prevent the inappropriate care of Plaintiff physically, emotionally, and psychologically.

   e.  Violating the duties set forth in the Restatement (Second) of Torts, Sections 314A & 322, as adopted in Pennsylvania.

Case ID: 230903172

268.    As a direct and proximate result of Defendants' aforementioned breaches, Plaintiff sustained physical and psychological harms and injuries as set forth in the preceding paragraphs.

269.    These incidents were the consequence of the negligence, recklessness, willful misconduct, and/or intentional acts of Defendants, and were due in no manner whatsoever to any act or failure to act on the part of Plaintiff.

270.    As a result of the Defendants' conduct, as outlined herein, Plaintiff was violated and forced to undergo vile atrocious acts of sexual abuse and as a result has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

271.    The harms, injuries, losses, and damages suffered by Plaintiff, and that she continues to suffer from, were directly and proximately caused by the negligence, willful misconduct, wanton, recklessness, and outrageous conduct of Defendant.

272.    Because of the grossly negligent, wanton, and outrageous conduct set forth in this complaint, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff demands judgment in her favor for compensatory and punitive damages against Defendants, in a sum in excess of $50,000, plus allowable taxable costs, interest, delay damages, and such other relief as this Honorable Court deems appropriate.

## COUNT VII – NEGLIGENCE PER SE
### PLAINTIFF v. ALL DEFENDANTS

Case ID: 230903172

273.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

274.     Defendants knew, had knowledge or had reasonable suspicion of harmful offensive contact against riders – customers, like Jane Doe K.B. and employees, that would offend any reasonable person's liberty interests and personal sense of dignity, in violation of laws, statutes, and ordinances which were designed to protect someone in the position of Plaintiff and which set forth the duty of care for people in the position of Defendants.

275.     Defendants knew, had knowledge or had reasonable suspicion of harmful acts being committed on riders – customers, like Jane Doe K.B. and employees, and not being stopped because SEPTA Defendants and Defendant Allied and Security Defendants failed to properly supervise and protect riders, like Jane Doe K.B., and negligently, recklessly, with willful misconduct, and/or intentionally violated their duties, obligations, policies and protocols.

276.     Defendants, as a result of accepting, condoning, concealing, encouraging, enabling, and permitting violence, committed negligence per se by violating laws, statutes, and ordinances which were designed to protect riders, like Plaintiff, and which set forth the duty of care for people in the position of Defendant SEPTA-owned property.

277.     Such laws, statutes, and ordinances include, but are not limited to:

   a. The principles of the Restatement (Second) of Torts §§ 317, 314A, 321, 322, 323, and other provisions;

   b. Criminal violations including those pursuant to Title 18 §§ 2701, 2702, 3121, 3123, 3124.1, 3124.2 A, 3125, 3126, 3127, 4304, 6301, 6318 A.1; and

   c. Other acts and/or omissions and violations constituting negligence as may be ascertained through discovery and may be demonstrated.

Case ID: 230903172

278.     Defendants knew, had knowledge or had reasonable suspicion of harmful acts and/or misconduct being committed by on SEPTA-owned property and negligently, recklessly, with willful misconduct, and/or intentionally violated their duties, obligations, policies and protocols.

279.     Defendants' violations constitute negligence *per se* under Pennsylvania law.

280.     The negligent, reckless, and/or intentional failures of Defendants to report such harmful acts allowed SEPTA-owned property to abuse Plaintiff, causing continuing harm to Plaintiff and the injuries and damages described herein.

281.     As a result of the Defendants' conduct, as outlined herein, Plaintiff was violated and forced to undergo vile atrocious acts of sexual abuse and as a result has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress, and/or other trauma; mental anguish, humiliation, sexual dysfunction, embarrassment, insomnia, fear, was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

282.     Such failure on the part of Defendants was negligent, reckless, intentional, willful, knowing, grossly negligent, deliberately, and recklessly indifferent, outrageous, malicious and/or was a reckless and conscious disregard for the safety of Plaintiff.

283.     The harms, injuries, losses, and damages suffered by Plaintiff, and that she continues to suffer from, were directly and proximately caused by the negligence, willful

Case ID: 230903172

misconduct, wanton, recklessness, and outrageous conduct of Defendant.

284.    Because of the grossly negligent, wanton, and outrageous conduct set forth in this

complaint, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff demands judgment in her favor for compensatory and

punitive damages against Defendants, in a sum in excess of $50,000, plus allowable taxable

costs, interest, delay damages, and such other relief as this Honorable Court deems

appropriate.

## COUNT V – ASSAULT & BATTERY

### PLAINTIFF V. DEFENDANT NGOY

285.    Plaintiff incorporates herein by reference all paragraphs of this Complaint as is

fully set forth herein.

286.    As a result of the Defendants' conduct, as outlined herein, Plaintiff was violated

and forced to undergo vile atrocious acts of sexual abuse and as a result has suffered and

continues to suffer great pain of mind and body, shock, emotional distress, physical

manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,

humiliation, and loss of enjoyment of life and/or has incurred and will continue to incur

expenses for medical and psychological treatment, therapy, and counseling.

287.    The harms, injuries, losses, and damages suffered by Plaintiff, and that she

continues to suffer from, were directly and proximately caused by the negligence, willful

misconduct, wanton, recklessness, and outrageous conduct of Defendants.

288.    Because of the grossly negligent, wanton, and outrageous conduct set forth in this

complaint, Plaintiff is entitled to punitive damages.

82

Case ID: 230903172

WHEREFORE, Plaintiff demands judgment in her favor for compensatory and punitive damages against Defendants, in a sum in excess of $50,000, plus allowable taxable costs, interest, delay damages, and such other relief as this Honorable Court deems appropriate.

SALTZ, MONGELUZZI & BENDESKY, P.C.

BY: _____/s/ Kristen Feden, Esq._____
ROBERT J. MONGELUZZI, ESQUIRE
ANDREW DUFFY, ESQUIRE
KRISTEN FEDEN, ESQUIRE
MARNI BERGER, ESQUIRE
*Attorneys for Plaintiff*

83

## COMPLETE LIST OF DEFENDANTS:

1. SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY
   1234 MARKET STREET
   PHILADELPHIA PA 19107
2. LESLIE RICHARDS
   1234 MARKET STREET
   PHILADELPHIA PA 19107
3. KENNETH DIVERS
   1234 MARKET STREET
   PHILADELPHIA PA 19107
4. THOMAS J.. NESTEL III
   1234 MARKET STREET
   PHILADELPHIA PA 19107
5. THOMAS SCHRILLO
   1234 MARKET STREET
   PHILADELPHIA PA 19107
6. BRIAN BUCK
   1234 MARKET STREET
   PHILADELPHIA PA 19107
7. PATRICK BARR
   1234 MARKET STREET
   PHILADELPHIA PA 19107
8. JOHN DOE BARONE
   1234 MARKET STREET
   PHILADELPHIA PA 19107
9. JOHN DOE SEPTA
   1234 MARKET STREET
   PHILADELPHIA PA 19107
10. ALLIED UNIVERSAL SECURITY SERVICES
    161 WASHINGTON STREET STE 600
    CONSHOHOCKEN PA 19428
11. FISTON NGOY
    3403 CONCORD ROAD
    YORK PA 17204
12. JOHN DOE SECURITY SERVICES
    1650 MARKET STREET 52ND FLOOR
    PHILADELPHIA PA 19103
13. JOHN DOE DEFENDANTS 1-10
    1650 MARKET STREET 52ND FLOOR
    PHILADELPHIA PA 19103

## VERIFICATION

I, ▮▮▮▮▮▮▮ hereby state that I am the Plaintiff in the within action and that I am

the statements made in the foregoing Civil Action Complaint are true and correct to the best of

my knowledge, information and belief, and that I understand that the statements therein are made

subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

▮▮▮▮▮▮ a.k.a. Jane Doe K.B.

Dated: _____ 09/28/2023

Case ID: 230903172