IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE K.B. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-3900 |
| | : | |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, et al. | : : : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                    **June 4, 2024**

Plaintiff Jane Doe K.B. brings this suit under 42 U.S.C. § 1983 and Pennsylvania state law against Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA"), various SEPTA employees, and others to recover damages arising from her rape by another passenger while on board a SEPTA train. SEPTA and the other Defendants employed by SEPTA at the time of the crime (collectively the "SEPTA Defendants")[1] move to dismiss the federal claims for failure to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Because K.B. has not sufficiently pled a constitutional violation, the SEPTA Defendants' partial motion to dismiss will be granted without prejudice.

**BACKGROUND**

The events giving rise to K.B.'s claims are horrific. On October 13, 2021, K.B. boarded a SEPTA train on the Market-Frankford Line ("MFL") in Philadelphia at 9:15 p.m. Compl. ¶ 91, ECF No. 1-3. Defendant Fiston Ngoy followed K.B. onto the train and sat down next to her. *Id.* ¶¶

---

[1] The other SEPTA Defendants are: Leslie Richards (SEPTA Chief Executive Officer and General Manager); Kenneth Divers (SEPTA Director of Outreach Programs and leader of SEPTA's S.C.O.P.E. Program); Thomas J. Nestel, III (SEPTA Chief of Transit Police); and Thomas Schrillo, Brian Buck, Patrick Barr, John Doe Barone, and John Doe SEPTA (SEPTA Transit Officers). K.B. has also sued Allied Universal Security Services (a security company hired by SEPTA), Fiston Ngoy (K.B.'s assailant), and other John Doe Defendants.

92-93. Once seated, Ngoy put his arm around K.B.'s shoulders. *Id*. ¶ 93. When K.B. attempted to nudge Ngoy's arm off, Ngoy began to verbally harass K.B. *Id*. ¶¶ 94-95. He then began groping K.B. *Id*. ¶ 96. Ngoy continued to verbally harass and grope K.B. for at least 40 minutes, with K.B. resisting the entire time. *Id*. ¶¶ 97, 185. At one point, K.B. fell unconscious. *Id*. ¶ 98. Yet no one on the train, including a SEPTA agent, attempted to intervene or report the assault. *Id*. ¶¶ 99-100.

After 40 minutes of harassing and groping K.B., Ngoy proceeded to rip off his clothes and vaginally rape her for at least eight minutes. *Id*. ¶¶ 101-02, 186. Right before the rape, the SEPTA agent on the train called SEPTA police and reported a "man disrobing" but did not report Ngoy's harassment, groping, or rape of K.B. *Id*. ¶¶ 104, 182. The train eventually arrived at the Transportation Station, where SEPTA officers boarded the train and removed Ngoy from K.B. *Id*. ¶¶ 6, 105. SEPTA had continued operating the train throughout the entire assault and rape. *Id*. ¶ 3.

At the time of the crime, SEPTA had the ability to access more than 28,000 cameras throughout its transportation system. *Id*. ¶ 85. At least one of these cameras recorded the crime. *Id*. ¶ 169. Several other sexual assaults and sex-related incidents had occurred on SEPTA trains and property in the years prior to K.B.'s assault and rape. *Id*. ¶ 108. In response to these crimes, SEPTA had hired private security, Defendant Allied Universal Services, and implemented safety plans with a goal of "prevent[ing] potential incidents from ever taking place." *Id*. ¶¶ 11, 77. These safety measures were in place on the night of October 13, 2021, when K.B. rode on the MFL. *Id*. ¶¶ 11-12. K.B. alleges SEPTA knew MFL was one of the most prevalent hotspots for violence, but concealed the full extent of the violence and criminal activity from the public. *Id*. ¶¶ 75, 89.

On September 29, 2023, K.B. filed a Complaint against all Defendants in the Philadelphia County Court of Common Pleas. Counts I, II, IV, V, and VI of the Complaint allege federal

constitutional claims under § 1983. SEPTA removed the case to this Court on October 6, 2023. The SEPTA Defendants now move to dismiss all federal claims in the Complaint.

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Twombly*, 550 U.S. at 555. But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). In evaluating a motion to dismiss, this Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

**DISCUSSION**

K.B. asserts five counts pursuant to § 1983 against the SEPTA Defendants for violating her constitutional rights under the Fourteenth Amendment Due Process Clause, alleging: violations pursuant to a state-created danger theory (Count I); a failure to intervene (Count II); a *Monell* claim based on the SEPTA Defendants' failure to train and supervise its employees (Count IV); a deprivation of rights by virtue of a special relationship (Count V); and a deprivation of rights by virtue of a state-created danger (Count VI). Compl. ¶¶ 203-65. The SEPTA Defendants move to

3

dismiss all of K.B.'s constitutional claims for failure to state a claim on which relief can be granted. Because K.B. does not contest dismissal of Count V, and because she has not sufficiently pled an underlying constitutional violation as required to state a § 1983 claim in Counts I, II, IV, and VI, the motion to dismiss will be granted.

As an initial matter, K.B. does not contest dismissal of Count V, which asserts a deprivation of rights by virtue of a special relationship. Her response in opposition states she "opposes dismissal of" only Counts I, II, and IV, Pl.'s Mem. Law 4, ECF No. 16,[2] and does not address the alleged special relationship between her and SEPTA. Under Local Rule of Civil Procedure 7.1(c), where a party fails to "serve a brief in opposition" to a motion, "the motion may be granted as uncontested." Accordingly, "plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motion[] to dismiss granted as uncontested." *Celestial Cmty. Dev. Corp., Inc. v. City of Phila.*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012); *see also, e.g.*, *Acuri v. Cnty. of Montgomery*, Civ. No. 20-5408, 2021 WL 1811576, at *10 (E.D. Pa. May 6, 2021) ("Plaintiffs' failure to substantively respond to Individual Defendants' arguments to dismiss Count V constitutes a waiver."). The Court will therefore grant the motion to dismiss as uncontested as to Count V.[3]

---

[2] Although K.B. does not explicitly contest dismissal of Count VI, the Court will construe her opposition as contesting dismissal of Count VI—a state-created danger theory claim—because most of her response focuses on the same theory. *See* Pl.'s Mem. Law 5 ("Plaintiff has adequately pled viable claims against SEPTA Defendants under a state created danger theory of liability and Defendants' Motion should therefore be dismissed.").

[3] The Court nonetheless notes "an affirmative duty to protect may arise out of certain 'special relationships' between the state and particular individuals." *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013) (en banc) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197-98 (1989)). As explained by the Third Circuit, this "special relationship" must be the result of "the State's affirmative act of restraining the individual's freedom to act on his own behalf— through incarceration, institutionalization, *or other similar restraint of personal liberty*." *Id*. at 168

4

As to Counts I, II, IV, and VI, § 1983 does not create substantive rights; it provides remedies for "deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citation omitted). To state a claim under § 1983, plaintiffs must allege "a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow*, 719 F.3d at 165-66 (citation omitted).

The § 1983 claims in this case allege violations of K.B.'s constitutional right to bodily integrity under the Fourteenth Amendment's Due Process Clause, which prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This right to due process is understood as a "limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195. While the Due Process Clause generally "does not impose an affirmative obligation on the state to protect its citizens," the state-created danger theory provides an exception. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 431 (3d Cir. 2006). Under this theory, a cause of action may exist under § 1983 when the state "affirmatively creates or enhances a risk of danger." *Id*.

To successfully plead a state-created danger claim, a plaintiff must allege:

1. the harm ultimately caused was foreseeable and fairly direct;

2. a state actor acted with a degree of culpability that shocks the conscience;

3. a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

---

(citing *DeShaney*, 489 U.S. at 200). As will be discussed, the Complaint pleads no facts suggesting the existence of such a special relationship here.

5

> 4. a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Haberle v. Troxell*, 885 F.3d 170, 176-77 (3d Cir. 2018) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)). A plaintiff must sufficiently plead all four state-created danger elements to state a claim. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (explaining plaintiff's failure to plead the fourth element "obviates the need to analyze the other three elements").

The SEPTA Defendants argue K.B. fails to sufficiently plead any of the four required elements. Defs.' Mem. Law 2-3, ECF No. 8-1. They further argue that, in the absence of any constitutional violation, they necessarily cannot be held liable under *Monell*. *Id*. at 22. Because the Court agrees K.B. has not sufficiently pled the third and fourth elements, the Court need not address the first two.

The Court begins with the fourth element, because "it is typically the most contested." *L.R. v. Sch. Dist. of Pa.*, 836 F.3d 235, 242 (3d Cir. 2016). To plead this element, a plaintiff must allege a state actor affirmatively "created a danger" or "rendered the citizen more vulnerable to danger than had the state not acted at all." *Id*. (quoting *Bright*, 443 F.3d at 281). "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282. "[A]ttempts to redefine clearly passive inaction as affirmative acts" are thus insufficient. *Morrow*, 719 F.3d at 178.

Noting "the inherent difficulty in drawing a line between an affirmative act and a failure to act," the Third Circuit has adopted the following approach for evaluating the fourth element:

> Rather than approach this inquiry as a choice between an act and an omission, we find it useful to first evaluate the setting or the "status quo" of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo. This approach,

6

>which is not a new rule or concept but rather a way to think about how to determine whether this element has been satisfied, helps to clarify whether the state actor's conduct "created a danger" or "rendered the citizen more vulnerable to danger than had the state not acted at all."

*L.R.*, 836 F.3d at 242-43 (citations omitted). If the contested action was only "a maintenance of the status quo," the action is insufficient to create liability. *Id*. at 243-44.

K.B. has alleged no facts suggesting any SEPTA Defendant affirmatively created a danger or rendered her more vulnerable to danger. The Complaint mostly contains allegations of the SEPTA Defendants' failure to act. *See, e.g.*, Compl. ¶ 41 (listing how "Defendants failed in numerous ways"); *id*. ¶¶ 99-104 (alleging no one on the train intervened or made efforts to report the crime at any time prior to or during the sexual assault and rape); *see also* Defs.' Mem. Law 21 n.3 (noting the Complaint "uses the root 'fail' 87 times"). But alleging the SEPTA Defendants failed to act is insufficient to satisfy the fourth element. *See Johnson v. City of Phila.*, 975 F.3d 394, 401 (3d Cir. 2020) (explaining the Third Circuit has "repeatedly held that an alleged failure to *do something*, standing alone, cannot be the basis for a state-created danger claim" (citation omitted)).

Recognizing a failure to act is insufficient, K.B.'s response in opposition claims SEPTA's "continuing to operate the train during her protracted sexual assault . . . is unquestionably an affirmative act." Pl.'s Mem. Law 10. She argues the act of "continuing rail services, stopping at each station, opening then closing the doors and leaving the station" enhanced the risk of danger as required by the state-created danger theory. *Id*. at 16. Specifically, she claims SEPTA's continued operation of the train "reduced her opportunities to break away from her rapist and escape the train" and "prevent[ed] law enforcement not already on the train from intervening," leaving her "in a worse position." *Id*. at 7, 16.

Despite K.B.'s efforts to frame it as an affirmative act, however, SEPTA's continued operation of the train constitutes passive inaction. The environment in which this terrible crime occurred is a SEPTA train in service. The operation of the train—including "continuing rail services, stopping at each station, opening then closing the doors and leaving the station"—is thus the "status quo" of the environment. *Id*. at 16. Put differently, SEPTA's continued operation of the train is not an exercise of authority resulting in a departure from the status quo—it is the *maintenance* of the status quo. *See L.R.*, 836 F.3d at 243-44. Tellingly, K.B. acknowledges this by stating "SEPTA took the repeated affirmative acts of continuing rail service *as if nothing was wrong*"—i.e., per the status quo. Pl.'s Mem. Law 2 (emphasis added). And arguing the status quo of continuing services left her "in a worse position" implies SEPTA should have stopped the train instead. But alleging SEPTA left K.B. in a worse position because it failed to stop the train—and not because of any affirmative act—is precisely the type of allegation insufficient to plausibly plead the fourth element. Accordingly, SEPTA's continued operation of the train was not an affirmative act, but a maintenance of the status quo, which is "insufficient to create liability." *L.R.*, 836 F.3d at 244.[4]

---

[4] K.B. claims SEPTA's continued train service is an affirmative act because it reduced her opportunities to escape and prevented law enforcement from intervening. Pl.'s Mem. Law 7, 16. As explained above, continuing train services was not an affirmative act. The Court nonetheless emphasizes an affirmative act is not enough to establish the fourth element—the act must also "*create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow*, 719 F.3d at 177. To do so, the "affirmative act must amount to a restraint of personal liberty that is similar to incarceration or institutionalization." *Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022) (citation and internal quotation marks omitted).

Here, there are no allegations suggesting the continuation of SEPTA services involved a restraint on K.B.'s personal liberty akin to incarceration or institutionalization. The conclusory allegation that "SEPTA separated [her] from the lifeline of local police who could have boarded the train and ended the assault" is contradicted by K.B.'s concession that the train continued its services as "normal," stopping and opening its doors at each station. Pl.'s Mem. Law 3, 10, 16. The allegation is also speculative, as it is solely based on what local police "could have" done, absent any facts suggesting local police attempted to board but were prevented from doing so.

K.B.'s other attempts to sufficiently plead the fourth element similarly fail. The only affirmative act plausibly alleged by K.B. involves the SEPTA agent who called SEPTA police and reported a man was taking his clothes off. Compl. ¶ 171. Reporting the crime to police is clearly an affirmative act. But, as noted, an affirmative act alone is not enough. Under the state-created danger theory, the affirmative act must also "*create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow*, 719 F.3d at 177; *see also Bright*, 443 F.3d at 283 n.7 ("But an affirmative act, while necessary, is not sufficient."). K.B. argues the SEPTA agent enhanced a danger by misreporting her rape as a "man disrobing," which "delay[ed] her ability to obtain medical care." Compl. ¶¶ 106, 182. She claims if the agent had correctly reported a rape, "more intervention could have resulted . . . and likely would have resulted in her not being raped." *Id*. ¶¶ 178, 182.

This argument misconstrues the fourth element. An affirmative act does not enhance a danger solely because it is less effective than another course of action. Even if more intervention would have resulted from a report of rape, no facts suggest the SEPTA agent's report of a man disrobing enhanced the danger K.B. was already facing from Ngoy. It was still a call for help, and there are no allegations that the SEPTA agent affirmatively stopped other reports or rescue efforts by making the call. K.B.'s arguments to the contrary ultimately allege the agent failed to report a rape, which is insufficient to satisfy the fourth element. *See Johnson*, 975 F.3d at 401.

Finally, the Complaint contains several general allegations of the SEPTA Defendants concealing information about crime on SEPTA-owned property. *See* Compl. ¶¶ 49, 54-60, 74, 84, 89, 113, 122, 124, 163. K.B. alleges "Defendants used their authority to conceal critical data and information on violence," which made her "more vulnerable to the danger of attack" and created

"an opportunity that otherwise [would] not have existed for Defendant Ngoy's horrific crime to occur." *Id*. ¶ 89.

From what the Court can discern, this allegation is entirely based on the SEPTA Defendants' failure to report crime data accurately and comprehensively.[5] *See id*. ¶ 49 (citing an investigation which found SEPTA data is "poorly kept" and "appears to be incomplete"); *see also id*. ¶ 56 (discussing SEPTA Defendants' failure to include a record-keeping category for sexual assault or harassment). K.B. argues the SEPTA Defendants' affirmative concealment of data is evidenced by their failure to include at least one known sexual harassment and assault incident in a SEPTA-provided spreadsheet of reported sex-related incidents. *Id*. ¶ 58. But the investigation K.B. relies upon to make this assertion does not suggest any Defendant concealed data—it suggests the SEPTA Defendants need to keep better records. *See id*. ¶ 49 n. 46; *see also id*. ¶ 57 n. 62. There are no facts alleging any specific Defendant affirmatively concealed data. K.B. simply concludes as much because data is missing from the spreadsheet.

More importantly, the Complaint includes no facts suggesting this supposed concealment placed K.B. in more danger than if the SEPTA Defendants had not acted at all. Insofar as K.B. implies the concealment of data resulted in a false sense of security, there are no allegations as to how this resulted in the creation or enhancement of a danger to K.B. as required by the fourth element. *See Martinez v. Se. Pa. Transp. Auth.*, Civ. No. 08-5021, 2009 WL 5101824, at *6 (E.D. Pa. Dec. 15, 2009) ("Plaintiff has not established that SEPTA's acts which are alleged to have created a false sense of security affirmatively placed her in more danger than had SEPTA not acted at all."). Accordingly, after viewing all of the facts in the light most favorable to K.B., the Court

---

[5] The Court notes K.B.'s response in opposition does not discuss any alleged concealment.

concludes she has failed to plausibly allege any affirmative act by the SEPTA Defendants that created or enhanced a danger. The fourth factor has not been plausibly pled.

K.B. similarly fails to sufficiently plead the third element. The third element of the state-created danger theory requires a plaintiff to be a foreseeable victim of the defendant's acts. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 912 (3d Cir. 1997). Foreseeable plaintiffs include "member[s] of a discrete class of persons subjected to the potential harm brought about by the state's actions." *Id*. at 913. But members of the "general population" are not foreseeable plaintiffs—some sort of relationship must exist between the plaintiff and the state actor. *Id*. at 912-13. Holding otherwise "would expand the scope of the state-created danger theory beyond its useful and intended limits." *Id*. at 913 n.12. Relevant here, courts in this district have consistently held SEPTA passengers are too numerous to constitute a discrete class for purposes of the state-created danger theory. *See Tillman-Williams v. Se. Pa. Transp. Auth.*, Civ. No. 23-3009, 2023 WL 6465388, at *3 (E.D. Pa. Oct. 3, 2023) (collecting cases).

K.B. correctly acknowledges that "[a]t the time she initially boarded the 1102 train and took her seat, she was part of the general population of SEPTA riders, which are not a discrete class." Pl.'s Mem. Law 13. But K.B. contends "she *became* a foreseeable victim" and member of a discrete class when SEPTA continued operation of train services for over 30 minutes, while she was assaulted on the train. *Id*. at 1, 14. In her view, "the duration of time that SEPTA knew, or should have known, that she was going to be raped (or worse)" provides a basis on which to distinguish her from the general SEPTA population because the continuation of train services during that timeframe placed only her in danger, and not "any one of the other 90,000 SEPTA daily passengers." *Id*. at 14-15.

The Court is unpersuaded by K.B.'s attempt to distinguish herself from the general population of SEPTA riders. Ultimately, K.B. argues she is a member of a discrete class solely because of the SEPTA Defendants' failure to act—i.e., because of SEPTA's continuation of train services. She cites no authority for this proposition, because there is none. K.B.'s status as a general SEPTA rider never changed: as discussed, once she entered the train, SEPTA maintained the status quo throughout the duration of the crime, with no affirmative act changing the environment. Members of a discrete class must be "subjected to the potential harm *brought about by the state's actions*." *Morse*, 132 F.3d at 913 (emphasis added). Here, the potential harm was not brought about by any SEPTA Defendant, but by Ngoy. K.B. was therefore a member of the general population of SEPTA passengers and cannot be a foreseeable plaintiff. Accordingly, she has failed to plausibly allege the third element. And because all four state-created danger elements must be sufficiently pled to state a claim, K.B.'s state-created danger theory claims fail.

K.B. also alleges SEPTA's failure to train and supervise its employees violated her constitutional rights. Compl. ¶¶ 239-242. Under a *Monell* theory of liability, a state actor may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," violates a constitutional right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). As noted, the § 1983 claims in this case allege a violation of K.B.'s constitutional right to bodily integrity, which is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Phillips*, 515 F.3d at 235.

To state a plausible *Monell* claim, K.B. must plead the violation of a constitutional right and that SEPTA policy or custom caused the violation. But the Due Process Clause does not impose an affirmative obligation on SEPTA to protect the life, liberty, or property interests of its

passengers. And as discussed above, SEPTA did not create the danger K.B. faced. Because SEPTA has not violated a constitutional right, K.B.'s *Monell* claim fails. *Gomez v. Se. Pa. Transp. Auth.*, No. 22-3230, 2023 WL 5950549, at *2 (3d Cir. Sept. 13, 2023) (affirming district court's dismissal of plaintiff's *Monell* claim because defendants did not create danger resulting in harm).

K.B. has requested leave to amend in the event the motion to dismiss is granted, claiming she "can plead additional facts regarding the details of the security video." Pl.'s Mem. Law 19. Federal Rule of Civil Procedure 15(a) requires the Court to "freely give leave" to amend "when justice so requires." Because it is possible K.B. could plead additional facts to support her § 1983 claims in Counts I, II, IV, and VI, these Counts will be dismissed without prejudice. The Court emphasizes allegations of a failure to act will not satisfy the state-created danger theory.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.